## GREEN v. MENOMINEE TRIBE.

### APPEAL FROM THE COURT OF CLAIMS.

No. 285. Argued March 13, 16, 1914.—Decided May 11, 1914.

Section 2 of the act of May 29, 1908, c. 216, 35 Stat. 144, conferring jurisdiction on the Court of Claims to hear and determine claims of certain Indian traders against the Menominee Tribe of Indians and certain members thereof, created no new right in favor of such traders except removal of the bar of limitations, and gave no right to sue the United States or any member of the Tribe in his individual capacity

as disassociated from his dependent condition as an Indian subject.

A contract by a tribe of Indians to guarantee payment of supplies to individual members thereof must conform to § 2103, Rev. Stat.

A claim for lumber equipment furnished to individual members of a tribe of Indians on the guarantee of the Tribe based on an agreement that the proceeds of the lumber cut should, to the extent permitted by the Government, pass through the hands of an agent and be applied to payment for the equipment cannot be enforced, under the act of May 29, 1908, against the Tribe or the Indians as members thereof or the United States when it appears that such proceeds of the lumber were collected by the agent and misapplied.

The right of a licensed Indian trader to deal with Indian tribes and individual Indians does not extend to making unlawful contracts.

47 Ct. Cl. 281, affirmed.

THE facts, which involve a claim against the Menominee Tribe for supplies furnished to individual members of the Tribe and the jurisdiction of the Court of Claims to consider such claim under the act of May 29, 1908, are stated in the opinion.

*Mr. L. T. Michener,* with whom *Mr. P. G. Michener* and *Mr. C. F. Dillett* were on the brief, for appellant:

Full jurisdiction was conferred on the Court of Claims by § 2, act of May 29, 1908, 35 Stat. 444.

Appellant had the right to make the United States a party defendant to this action.

Congress had power to confer jurisdiction on the Court of Claims to adjudicate this case, even if the Indians were and are citizens of the United States.

The Secretary of the Interior and other officers have broad powers in dealing with Indian affairs.

The statutes conferred on the traders the right to trade with the Indians.

The agreement sued on related to dead and down timber and was made lawfully.

The petition alleges facts sufficient to constitute a cause of action.

Rev. Stat., § 2103, does not apply to the contract in the case at bar.

In support of these contentions, see *Blackfeather* v. *United States*, 155 U. S. 180, and 190 U. S. 368; *Braden's Case*, 16 Ct. Cls. 389; *Campbell* v. *Holt*, 115 U. S. 620; *Cherokee Nation* v. *Hitchcock*, 187 U. S. 294; *Clark* v. *United States*, 95 U. S. 539; *Dahlgren's Case*, 16 Ct. Cls. 30; *Delaware Indians* v. *Cherokee Nation*, 193 U. S. 127; *Ex parte Wall*, 107 U. S. 265; *Journeycake* v. *Cherokee Nation*, 155 U. S. 196; *La Abra Mining Co.* v. *United States*, 175 U. S. 423; *Lone Wolf* v. *Hitchcock*, 187 U. S. 553; *McElrath* v. *United States*, 102 U. S. 426; *Navarre's Case*, 33 Ct. Cls. 235; 173 U. S. 77; *Neal's Case*, 14 Ct. Cls. 280; *Nor. Pac. R. R. Co.* v. *Lewis*, 162 U. S. 366; *Roberts* v. *United States*, 92 U. S. 539; *Sac and Fox Indians Case*, 220 U. S. 481; *Tiger* v. *West. Invest. Co.*, 221 U. S. 286; *Townsend* v. *Little*, 109 U. S. 504; *United States* v. *Celestine*, 215 U. S. 278; *United States* v. *Cook*, 19 Wall. 591; *United States* v. *Nix*, 189 U. S. 199; *United States* v. *Rickert*, 188 U. S. 278.

*Mr. Assistant Attorney General Thompson* for the United States:

Appellant has attempted to set up a new and different agreement in his amended petition.

The United States have not been properly made a party defendant.

Congress has no power to refer controversies between residents of the same State to the Court of Claims.

Congress has no power to waive the statute of limitations in this case.

Service of notice was necessary in order to give Court of Claims jurisdiction of the persons of defendants.

Property rights of individual Menominee Indians are protected by state laws of Wisconsin.

Individual tribal Indians have the right to sue and be sued in the courts of States where they reside.

There is no liability on the tribe under an oral agreement.

The tribe is not liable for the negligence or torts of the Indian agent.

In support of these contentions, see *Alter's Appeal,* 67 Pa. St. 34; 15 Am. & Eng. Ency., 2d ed., 11, 12; *Brown v. United States,* 44 Ct. Cls. 283, 311; *Bank of Columbia v. Okely,* 4 Wheat. 234, 242; *Cohens v. Virginia,* 6 Wheat. 264, 293; *Clement v. Sigur,* 29 La. Ann. 798, 802; *Ex parte Wall,* 107 U. S. 265, 289; *Felix v. Patrick,* 145 U. S. 317, 332; *Finn v. United States,* 123 U. S. 227; *Forbes v. Mitchell,* 1 J. J. Marsh. 440, 441; *Green v. Menominee Indians,* 46 Ct. Cls. 68, and 47 Ct. Cls. 281; *Gho v. Julles,* 1 Wash. Ter. 325, 329; *Godfroy v. Scott,* 70 Indiana, 259; *Hitchcock v. United States,* 22 App. D. C. 275; *Hite v. Hite,* 2 Rand, 409, 417; *Ingraham v. Ward,* 56 Kansas, 550; *Justices v. Murray,* 9 Wall. 274, 287; *Ke-tuc-e-mun-guah v. McClure,* 122 Indiana, 541; *Langford v. United States,* 101 U. S. 341, 345; *La Abra Mining Co. v. United States,* 175 U. S. 423; *Murray's Lessee v. Hoboken Land Co.,* 18 How. 272, 276; *McElrath v. United States,* 102 U. S. 426, 439; *Palairet's Appeal,* 67 Pa. St. 479; *Rubideaux v. Vallie,* 12 Kansas, 38, 52; *Stacy v. La Belle,* 99 Wisconsin, 520, 524; *Schick v. United States,* 195 U. S. 71, 72; *Swartzel v. Rogers,* 31 Kansas, 374; *Stewart v. United States,* 206 U. S. 185; *United States v. Kagama,* 118 U. S. 375; *United States v. Klein,* 13 Wall. 128; *United States v. Flournoy,* 69 Fed. Rep. 891; *United States v. Mille Lac Indians,* 229 U. S. 498; *Vigo's Case,* 21 Wall. 648; *Woodford v. Baker,* 10 Oregon, 491, 494; *Water Valley v. Seamen,* 53 Mississippi, 655, 660. See also act of May 29, 1908 (jurisdictional act), 35 Stat. 445, 446; act of March 31, 1882 (ratifying permit), 22 Stat. 36, 37; acts of June 12, 1890 (showing how tribal fund was created), 26 Stat. 146, and June 28, 1906, 34 Stat. 547; Const. U. S., Art. III, §§ 1 and 2; Fifth and Seventh Amendments; Const. Wisconsin, Art. 1, § 5; *Id.,* Art. 75,

§ 20; Statutes Wisconsin, §§ 2629, 2630, 4222, 4225; Judicial Code, §§ 24, 145, 233, 235.

Mr. Chief Justice White delivered the opinion of the court.

By this appeal a review is sought of a judgment of the court below holding that an amended petition filed by the appellant stated no cause of action and dismissing the same. (47 Ct. Cls. 281.) Our attention therefore must be directed to the petition, but as a means of at once clarifying the issues, we refer to the act of Congress authorizing the suit and briefly state the averments of an original petition which was likewise dismissed because stating no cause of action.

By an act of Congress of May 29, 1908 (35 Stats. 444, c. 216, § 2), jurisdiction was conferred upon the Court of Claims "to hear, determine, and render final judgment, notwithstanding lapse of time or statute of limitation, for any balances found due, without interest, with the right of appeal as in other cases," upon the claims of eight named persons who were described in the act as "traders," against the "Menominee tribe of Indians in Wisconsin and against certain members of said tribe at the Green Bay Agency, for supplies, goods, wares, merchandise, tools, and live stock furnished certain members of the said tribe after the first day of January, in the year eighteen hundred and eighty, for the purpose of carrying on logging operations upon the Menominee Indian Reservation, in Wisconsin." The statute further provided: "Said court shall, in rendering judgment, ascertain and determine the amount, if any, due upon each of said claims, and if the court find that there is a liability upon any of said claims, it shall then determine if such liability be that of the said Menominee tribe of Indians as a tribe or that of individual members of said tribe, and it shall

render judgment for the amount, if any, found due from said tribe to any of said claimants, and it shall render judgments for the amounts, if any, found due from any of the individual members of said tribe to any of said claimants." The statute then provided the means by which the judgments, if any were rendered, whether against the tribe or against individual Indians, should be paid.

Green, the appellant, one of the traders named in the act, sought to recover from the Menominee tribe and 158 named members thereof an amount alleged to be the price of certain equipment and supplies alleged to have been furnished by him. The liability of the individual Indians was based upon averments that they had received during the years 1886 to 1889 the amount of the equipment and supplies sued for, and that they had contracted to pay for the same, the supplies having been furnished them to enable them to carry on logging operations on the Menominee Reservation in Wisconsin. The liability of the tribe was based on averments that it had expressly guaranteed that the individual Indians, members of the tribe, would pay for the supplies furnished them for the purposes and under the circumstances alleged. The defendants jointly demurred on two grounds: first, that the act conferring authority to bring suit was repugnant to the Constitution, and second, because the petition stated no cause of action. Holding that Congress had the undoubted power to pass the jurisdictional act, the court overruled the first ground. It also overruled the second ground as to the individual members of the tribe who were made defendants, but it sustained the exception of no cause of action as to the tribe, the court holding that "under the averments of the petition the Menominee Tribe of Indians is but a naked guarantor for the debt of another, and such promise not being in writing is void under the statute of frauds." The suit, as to the tribe, was therefore dismissed.

By leave, an amended petition was filed stating a new cause of action and joining the United States as defendant. This petition after alleging that the petitioner was a citizen of the United States and a resident of Wisconsin and after counting upon the jurisdictional act, made in substance the following averments: That in 1881 the Menominee Indians on the reservation were in a destitute condition and to save them and their families from starvation, the United States granted them permission to cut and sell the dead and down timber on the reservation "ten per cent. of the proceeds to go to the benefit of the said tribe and of those performing labor in that respect." That when it developed that the Indians, because of their extreme poverty and want of credit could not procure the equipment and supplies which were essential to enable them to make use of the permission, the Commissioner of Indian Affairs sent a special agent, John A. Wright, to the Reservation to make some arrangement whereby such condition could be remedied. That a council of the tribe was thereupon held, attended by all the chiefs and head men and practically all the members of the tribe, and it was agreed by and between the then Indian Trader, M. Wescott, "as one party to the agreement, and the Menominee Indian Tribe as the other party thereto, that the said M. Wescott, the duly licensed Indian Trader, at Keshena, Wisconsin, should furnish necessary equipment and supplies to those members of the tribe who desired to engage in logging operations to enable them to carry on such work, and support their respective families while so engaged, such equipment and supplies not to exceed the sum of $2.50 for each thousand feet of logs so cut and sold; that all logs cut and hauled by the Menominee Tribe in the logging operations were to be sold through the Indian Agent to the highest and best bidder; and that the prices for such supplies as were to be furnished by the petitioner, should be such prices as were being paid in cash for similar

supplies in that part of the State, with transportation added; that said Menominee Tribe promised and agreed that such equipment and supplies so furnished should be paid for out of the first proceeds from the sale of the logs so to be cut and sold. That said agreement was made with the consent and approval of the Indian Agent residing at Keshena, Wisconsin, and in charge of said Menominee Indian Reservation, and also by said special agent, John A. Wright. That said agreement had the unanimous approval of all members of the tribe present at said council. That said agreement was made orally by the said M. Wescott, personally, and by the chiefs and head men on behalf of said tribe. . . ." It was alleged that the agreement thus made was carried out by the tribe and by Wescott who made advances for the purposes of the operations in cutting the dead and down timber and continued to do so until the year 1886 when Wescott ceased to be the Indian trader and was succeeded by Green, the petitioner, and one Stacy whose rights the petitioner Green had acquired. The petition then charged that as the condition of destitution and inability to obtain equipment and supplies which had led to the making of the agreement with Wescott yet prevailed after petitioner and Stacy became the Indian traders, on the first of January, 1887, it was agreed between petitioner and Stacy and the tribe that the previous agreement should be continued in full force and effect with petitioner and Stacy, the petition expressly averring that "said last mentioned agreement was made with your petitioner and W. H. Stacy, personally, and on behalf of the Menominee Tribe by the chiefs and head men thereof, which said chiefs and head men still continued to have and were recognized as having authority to make contracts in behalf of, and binding on said tribe. That said last mentioned agreement was approved by the Indian Agent at Keshena, Wisconsin, and was acquiesced in by all members of said tribe, and treated by all

parties interested as valid and binding on the contracting parties."

It was averred that up to 1889 supplies were furnished in accordance with the agreement with the approval of the Indian agent and the United States, and with a few exceptions were paid for by the methods pointed out by the contract; that during the year 1889, however, supplies amounting to $13,087.46 were furnished to 158 members of the tribe, the name of each member and the amount supplied him being stated, for which payment had not been made either by the Indians, the tribe, or the United States.

It was further averred that such unpaid for supplies were furnished "in accordance with and relying upon said agreement" and that petitioner and Stacy "did not and would not extend credit to the individual members of said tribe, but extended such credit solely to the tribe, relying upon said agreement." It was further alleged that the proceeds from the sales of the dead and down timber cut and hauled by the Indians were received by the Indian agent and if the amounts which came into his hands in accordance with the contract and which were subject by its terms to be applied to the payment of the supplies advanced under the terms of the agreement had been so applied, all the supplies would have been paid for, but that they remain unpaid for because "such proceeds were not so applied." After averring that the logging operations and the credits extended by the petitioner and Stacy were for the benefit of the tribe, the petition charged that "there is a large fund in the possession of the United States to the credit and for the benefit of said Menominee Tribe of Indians, derived through their logging operations, and now amounting to more than a million and a half of dollars, which fund has been accumulated through the credit extended and assistance rendered by licensed traders to the Menominee Indians in logging operations,"

but there was no averment that such sum or any part thereof was derived from payments made to the United States by the Indian agent of any portion of the sum derived from the ten per cent. provided for in the contract and which, it was contemplated would be used by the Indian agent for the purpose of paying the trader for the supplies furnished by him. There was also no averment that the money to the extent of the amount of the supplies which was received by the Indian agent out of the funds of the Indians and which was not by him applied to pay for the supplies, was ever turned over to the Indians or that they became in any way the beneficiaries thereof.

The petition concluded with the following averment and prayer:

"Your petitioner avers that there is due him from the Menominee Tribe of Indians, or from the individual members thereof, as may be found and adjudicated by the court, the sum of Thirteen Thousand and Eighty-seven Dollars, Forty-six Cents ($13,087.46).

"Wherefore the petitioner prays judgment for Thirteen Thousand and Eighty-seven Dollars, Forty-six Cents ($13,087.46)."

By a general demurrer the defendants besides questioning the right to file the amended petition on the ground that it constituted an entire departure, and insisting in any event that, if there was a right to file it, its averments did not state a cause of action, denied the right to implead the United States as a defendant and challenged the constitutionality of the jurisdictional act. The court without specifically directing its attention to the other grounds came to consider whether the amended petition stated a cause of action and deciding that it did not, dismissed the cause, and as we at the outset said, the rightfulness of its action in so doing is the matter we are called upon to decide. ·

The contentions pressed upon the one side to sustain the correctness of the conclusion of the court below and

on the other to demonstrate the existence of reversible error, all but involve an examination of the reasoning which led the court to its conclusion and we think the most direct way to dispose of the case will be to state under separate headings the propositions to which the court gave its sanction and the reasons relied upon to establish that error was committed.

1. The court held that the jurisdictional act except so far as concerned the statute of limitations created no new right in favor of the petitioner, but simply afforded a means of establishing by a proceeding in the Court of Claims the existence, if any, of a claim against the tribe and the individual members of the tribe as such. From this premise the conclusion was deduced that the act gave no right to sue the United States and conferred no jurisdiction upon the court below over claims against an Indian as a mere individual aside from his membership of the tribe or dissociated from his dependent condition as an Indian subject because of such condition to the exercise by the United States of governmental supervision and control. The court consequently decided that it was not concerned with any supposed liability of the individual defendants as citizens of the United States resulting from their purely individual and personal contracts and which, therefore, were not related to or connected with tribal membership or the dependency resulting from status as an Indian as distinguished from citizenship. We think the conclusions thus reached by the court are so clearly the necessary result of the text of the act that we content ourselves with referring to that text as a demonstration of their soundness.

2. Concluding that the relevant provisions of § 2103 of the Revised Statutes (which are in the margin [1]) were ap-

---

[1] SEC. 2103. No agreement shall be made by any person with any tribe of Indians, or individual Indians not citizens of the United States, for the payment or delivery of any money or other thing of value, in

plicable and controlling, as the contract alleged was not in writing and did not in other respects conform to the statute, it was held that no right to recover was stated in the petition. Again, we think that the conclusion of the court on this subject is so clearly within the text of the statute that it suffices to direct attention to such text without going further. But if it be conceded for argument's sake that there is ambiguity involved in determining from the text whether the statute is applicable, we are of the opinion that the case as made is so within the spirit of the statute and so exemplifies the wrong which it was intended to prevent and the evils which it was intended to remedy as to dispel any doubt otherwise engendered. Nothing, we think, could more cogently demonstrate this statement than does the development in the court below concerning the claim in controversy: the uncertainty as to the alleged debtor manifested by the claim against the individual members of the tribe as principals and against the tribe as a mere surety, shifting as the exigencies of the case required to a claim against the tribe as principal and secondarily against the members as mere

---

present or in prospective, or for the granting or procuring any privilege to him, or any other person in consideration of services for said Indians relative to their lands, or to any claims growing out of, or in reference to, annuities, installments, or other moneys, claims, demands, or thing, under laws or treaties with the United States, or official acts of any officers thereof, or in any way connected with or due from the United States, unless such contract or agreement be executed and approved as follows:

First. Such agreement shall be in writing, and a duplicate of it delivered to each party.

Second. It shall be executed before a judge of a court of record, and bear the approval of the Secretary of the Interior and the Commissioner of Indian Affairs indorsed upon it.

     \*     \*     \*     \*     \*     \*     \*     \*

All contracts or agreements made in violation of this section shall be null and void, . . .

accessories, culminating in a prayer for relief which in and of itself points to the uncertainty with which the transactions referred to were environed. And this is additionally fortified by observing that on the face of the petition it appears that an adequate amount of the labor and property of the tribe or of its individual members passed into the hands of the person designated under the alleged contract and who by its terms was charged with the duty of paying it over for the equipment and supplies furnished. A situation which makes it clear that the controversy is not whether there is a liability express or implied for supplies and equipment received and not paid for, but upon whom the loss must fall resulting from the failure of the person designated under the asserted contract and who received the money, to discharge his duty by paying it over to the furnisher of the supplies who was a party to the alleged contract and in whose interest and for whose benefit presumably the provision as to the retention and paying over of the money was made.

But it is said the statute ought not to be held applicable because the petitioner was a licensed Indian trader authorized to deal with the tribe and its members. But manifestly the right to deal did not confer power to deal by making unlawful contracts.' And this consideration also answers the proposition so much insisted upon that because the asserted contract was made in the presence of and with the assent of an agent of the Interior Department, therefore the provisions of § 2103 should not be held applicable. We say the prior reasoning is controlling since it cannot be held that the presence of the agent of the Interior Department authorized the doing of that which was expressly prohibited by law. In other words, that an unlawful contract became lawful because of the presence, at its making, of a public officer whose obvious duty it was to see to it that the law was not violated. Indeed when the prohibitions of § 2103 are considered and the

presence of the representative of the Interior Department at the time the alleged agreement was entered into is borne in mind, if inferences are to be indulged in it is not to be inferred that that which was prohibited by law was done, but rather the assumption should be that instead of leaving the trader who was to furnish the equipment and supplies for utilizing, by the Indians, the dead and down timber to depend for his payment upon the mere force of the contract agreements of the tribe or its individual members, having regard to the interest of the trader and his protection and with his-consent it was arranged that the proceeds to arise from marketing the dead and down timber should go into the hands of the Indian agent so that before paying the Indians for their labor, the sum due for the supplies should be paid by the agent to the trader, thus in a sense impounding in the hands of the person selected by him the proceeds for the trader's benefit.   And this view answers the contention made that even in the absence of an express contract, there should have been a judgment against the tribe and its members upon the theory of an implied obligation to pay arising from the fact of the receipt by the tribe or its members of supplies or equipment for which they had not paid.   True, in a narrow sense it may be said that the case involves the right of the petitioner to be paid for the supplies furnished, but from the point of view of the Indians in a broad sense the case as made involves deciding whether the petitioner should bear the loss of the failure of the agent to pay over to him out of the moneys retained for that purpose, the sum of the advances of supplies, that is to say, whether the Indians after having placed in the hands of the designated person the sum of the supplies are under the obligation to pay again, that is to pay twice.

*Affirmed.*