NATIVE VILLAGE OF EYAK,
Appellant,

v.

GC CONTRACTORS, Appellee.

No. 6274.

Supreme Court of Alaska.

Jan. 14, 1983.

Roger L. Hudson, Roberts & Shefelman, Anchorage, for appellant.

Kenneth O. Jarvi, Law Offices of Kenneth O. Jarvi, Anchorage, for appellee.

Robert E. Price, Asst. Atty. Gen., Wilson L. Condon, Atty. Gen., Juneau, for amicus curiae State of Alaska.

Before BURKE, C.J., RABINOWITZ and COMPTON, JJ., and DIMOND, Senior Justice.*

OPINION

COMPTON, Justice.

In this appeal, the Native Village of Eyak ("Eyak") contends that it is an "Indian tribe" and therefore immune from the suit brought against it by appellee GC Contractors. Eyak further contends that it did not waive its immunity by entering into a contract with GC Contractors containing an arbitration clause. We disagree with this contention. For the reasons set forth below, we conclude that it is not necessary to determine whether Eyak is an Indian tribe because, assuming that it is, Eyak waived whatever immunity it possessed when it agreed to resolve by arbitration any disputes that arose under its contract with GC Contractors.

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 16, of the

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1977, Eyak entered into a contract with GC Contractors, Inc., under which GC Contractors was to build a community center for Eyak on land leased by Eyak. The contract provided that disputes arising under it were to be resolved by arbitration. Eyak received a grant from the United States Economic Development Administration to pay for its community center.

Although GC Contractors completed construction of the community center, Eyak failed to pay $13,745.98 due under the contract. GC Contractors sued Eyak in the superior court to foreclose on a lien it had recorded. Eyak answered the complaint, denying it owed the money. It also asserted as affirmative defenses that it was immune from suit and that the parties had agreed by contract to submit disputes to arbitration. GC Contractors noticed the matter for arbitration and proceedings were subsequently held. Eyak again contended that it was immune from suit and argued that it would not be bound by the arbitration decision. The arbitrator impliedly rejected this argument and awarded GC Contractors the full sum sought.

GC Contractors requested confirmation of the award in the superior court. The court ruled that Eyak failed to establish that it is an Indian tribe and the court accordingly confirmed the arbitration award. Eyak appeals from this determination.

## II. DISCUSSION

Eyak's principal argument on appeal is that the superior court erred in ruling that it is not an Indian tribe. Indian tribes have been held to possess many but not all of the privileges of sovereignty that foreign nations and the United States hold. *E.g., White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 142, 100 S.Ct. 2578, 2583, 65 L.Ed.2d 665, 671 (1980); *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106, 115 (1978); *United States v. Wheeler,* 435 U.S. 313, 322–26, 98

Constitution of Alaska and Alaska R.Admin.P. 23(a).

S.Ct. 1079, 1085–87, 55 L.Ed.2d 303, 312–15 (1978); *Worcester v. Georgia,* 31 U.S. (6 Peters) 515, 8 L.Ed. 483 (1832). One of the sovereign privileges that Indian tribes possess is immunity from suit. *E.g., Santa Clara Pueblo v. Martinez,* 436 U.S. at 58, 98 S.Ct. at 1677, 56 L.Ed.2d at 115; *United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 512–13, 60 S.Ct. 653, 656–57, 84 L.Ed. 894, 898–99 (1940); *Atkinson v. Haldane,* 569 P.2d 151, 163 (Alaska 1977).

■ Eyak contends that it is a federally recognized "tribal entity," possessing the attribute of immunity from suit. Whether an Alaska Native village, such as Eyak, constitutes a "tribal entity" generally or for some limited purpose under a particular federal act is an issue that need not be resolved by this court at this time. Assuming *arguendo* that Eyak is a federally recognized tribal entity, we hold that Eyak nonetheless is not immune from GC Contractor's suit because Eyak waived whatever immunity it possessed by agreeing to submit to arbitration any disputes arising from its contract with GC Contractors.

■ Eyak contends that this court cannot consider the issue of waiver because GC Contractors did not file a cross-appeal to preserve that issue for our determination. We disagree. This court has repeatedly held that it may affirm a judgment of the superior court on different grounds than those advanced by the superior court and even on grounds not raised by the parties in the superior court. *E.g., Rutherford v. State,* 605 P.2d 16, 21 n. 12 (Alaska 1979); *Stordahl v. Government Employees Insurance Co.,* 564 P.2d 63, 67 n. 16 (Alaska 1977); *Moore v. State,* 553 P.2d 8, 20–21 (Alaska 1976).

The arbitration clause contained in the contract entered into by Eyak and GC Contractors provides in relevant part as follows:

7.9.1 All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof, except as provided in Subparagraph 2.2.11 with respect to the Archi-tect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.9.4 and 9.9.5, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise.... The foregoing agreement to arbitrate and any other agreement to arbitrate with an additional person or persons duly consented to by the parties to the Owner Contractor Agreement shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

Eyak contends that this clause could not waive its sovereign immunity for three reasons: first, only Congress and not the Indian tribe may waive tribal sovereign immunity; second, the contract containing the arbitration clause is illegal because it was not approved by the Secretary of the Interior; and, third, an arbitration clause is not a sufficiently clear and unequivocal waiver of immunity to be effective.

### A. Necessity of Congressional Authorization

■ Eyak argues that *United States v. United States Fidelity & Guaranty,* 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940), supports its position that only Congress may waive an Indian tribe's sovereign immunity. In that case, however, the United States Supreme Court did not address the issue of waiver of sovereign immunity. What was at issue in *United States Fidelity & Guaranty* was whether an Indian tribe possesses immunity from suit at all. The Court held that the tribe involved was immune, stating: "These Indian Nations are exempt from suit without congressional authorization." 309 U.S. at 513, 60 S.Ct. at 656, 84 L.Ed. at 899 (footnote omitted). Placed in its proper context, the phrase

"without congressional authorization" cannot be construed to mean that an Indian tribe is unable to waive its immunity.

Eyak also relies upon *California v. Quechan Tribe of Indians,* 595 F.2d 1153, 1155 (9th Cir.1979), and *Long v. Chemehuevi Indian Reservation,* 115 Cal.App.3d 853, 171 Cal.Rptr. 733, 734 (Cal.App.), *cert. denied,* 454 U.S. 831, 102 S.Ct. 129, 70 L.Ed.2d 109 (1981). Although there is dicta in these decisions that an Indian tribe cannot be sued without Congressional authorization, the issue of whether an Indian tribe can, by itself, waive its immunity was not before the court in either case. Thus, these cases are not determinative as to whether a tribe may waive its immunity.

In *United States v. Oregon,* 657 F.2d 1009 (9th Cir.1981), the Ninth Circuit Court of Appeals held that an Indian tribe had waived its immunity by entering into an agreement that stated: "[I]n the event that significant management problems arise from this agreement that cannot be resolved by mutual agreement, the parties agree to submit the issue to federal court for determination." 657 F.2d at 1016. In reaching its conclusion, the court relied upon the statement by Justice Brandeis in *Turner v. United States,* 248 U.S. 354, 358, 39 S.Ct. 109, 110, 63 L.Ed. 291, 294 (1919): "Without authorization from Congress, the [tribe] could not ... have been sued in any court; *at least, [not] without its consent.*" (Emphasis added.) The court also relied upon dicta from *Puyallup Tribe, Inc. v. Department of Game,* 433 U.S. 165, 173, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667, 674 (1977), in which the Supreme Court stated that Washington had failed to establish "that either *the Tribe* or Congress ha[d] waived its claim of immunity or consented to the entry of an order against it." (Emphasis added.) Finally, the court found authority for its holding in the following policy considerations:

> As the Yakima Tribe itself argues, its treaty with the government secures to it certain powers of self-determination. To hold that the ability to waive immunity is not among those powers would be con-

trary to that right. *See Bottomly* [*v. Passamaquoddy Tribe,* 599 F.2d 1061, 1066 (1st Cir.1979) ]. Further, non-Indian interests might prudently avoid contracts with Tribes that would otherwise prove beneficial to the Indians, with the result that Tribes wishing to engage in business would be needlessly impeded.

657 F.2d at 1014 (footnote omitted).

■ This holding is consistent with the decisions of other jurisdictions recognizing that an Indian tribe may waive its sovereign immunity; *e.g., Ramey Construction Co. v. Apache Tribe,* 673 F.2d 315, 318 (10th Cir.1982); *Merrion v. Jicarilla Apache Tribe,* 617 F.2d 537, 540 (10th Cir.), *cert. granted,* 449 U.S. 820, 101 S.Ct. 71, 66 L.Ed.2d 21 (1980); *Fontenelle v. Omaha Tribe,* 430 F.2d 143, 147 (8th Cir.1970); *Parker Drilling Co. v. Metlakatla Indian Community,* 451 F.Supp. 1127, 1136 (D.Alaska 1978). In accordance with these authorities, we conclude that Eyak could waive whatever immunity from suit it possessed.

### B. *Necessity of Secretary's Approval*

We next consider Eyak's argument that the failure of the Secretary of the Interior to approve the contract with GC Contractors under 25 U.S.C. § 81 makes the entire contract void, including the alleged waiver of immunity contained in it. 25 U.S.C. § 81 requires the Secretary of the Interior to approve all contracts made by Indian tribes that relate to their tribal land or to claims against the United States. It reads in part:

> No agreement shall be made by any person with any tribe of Indians, or individual Indians not citizens of the United States, for the payment or delivery of any money or other thing of value, in present or in prospective, or for the granting or procuring any privilege to him, or any other person in consideration of services for said Indians relative to their lands, or to any claims, ... demands, or thing, under laws or treaties with the United States or official acts of any officers thereof, or in any way connected with or due from the United States, unless such contract or agreement

be executed and approved [by the Secretary of the Interior and the Commissioner of Indian Affairs].

If 25 U.S.C. § 81 is applicable and the Secretary of the Interior fails to approve the contract, then the contract is void. *Green v. Menominee Tribe of Indians,* 233 U.S. 558, 570–71, 34 S.Ct. 706, 710–11, 58 L.Ed. 1093, 1098 (1914).

■ Again assuming *arguendo* that Eyak is an "Indian tribe," we conclude that 25 U.S.C. § 81 is nonetheless inapplicable in this case. The contract between GC Contractors and Eyak to build a community center does not involve tribal land: Eyak is leasing from a third party the land upon which the center has been built. Throughout its briefs, Eyak states only in a conclusory fashion that the contract is subject to 25 U.S.C. § 81; there is no analysis supporting this. In reply to the Amicus Brief filed by the state, Eyak proposes that there is "no meanin[g]ful conceptual distinction ... suggested by the State between a logging contract, such as that involved in *Green v. Menominee Tribe of Indians,* 233 U.S. 558, 34 S.Ct. 706, 58 L.Ed. 1093 (1913) [sic: 1914], and a construction contract. Each is for services relative to tribal lands within the meaning of the statute." To the contrary, there is an obvious "meaningful conceptual distinction" between a logging contract and the construction contract at issue in this case: a logging contract regarding timber located on reservation lands indisputably involves "services relative to tribal lands"; a construction contract by which a community center is to be built on land not belonging to the Native village cannot be said to involve "services relative to tribal lands."

Inasmuch as the contract is not for services relative to tribal lands and no argument has been made that the contract involves a claim against the United States, the contract did not require the approval of the Secretary of the Interior under 25 U.S.C. § 81. Accordingly, the contract and its arbitration clause are valid.

## C. *Effect of Arbitration Clause*

The last issue we address is Eyak's contention that the arbitration clause contained in its contract with GC Contractors did not constitute an effective waiver of its immunity from suit. Eyak relies upon *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), in which the United States Supreme Court stated, "a waiver of sovereign immunity ' "cannot be implied but must be unequivocally expressed." ' " 436 U.S. at 58, 98 S.Ct. at 1677, 56 L.Ed.2d at 115 (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52, 56 (1969), *quoted in United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114, 121 (1976)). Eyak argues that entering into a contract that contains an arbitration clause is not an unequivocal expression of waiver of immunity. We disagree.

■ Unfortunately, we have not been directed to any decisions, nor has independent research revealed any decisions, that address the precise issue of whether an arbitration clause constitutes an explicit waiver of immunity from suit. Nonetheless, we believe it is clear that any dispute arising from a contract cannot be resolved by arbitration, as specified in the contract, if one of the parties intends to assert the defense of sovereign immunity. To the extent possible, all provisions in a contract should be found meaningful. *Tucker v. Byler,* 27 Ariz.App. 704, 558 P.2d 732, 735 (Ariz.App.1976); *Quenzer v. Quenzer,* 225 Kan. 83, 587 P.2d 880, 882 (Kan.1978). The arbitration clause in Eyak's contract with GC Contractors would be meaningless if it did not constitute a waiver of whatever immunity Eyak possessed. Furthermore, under similar circumstances the Ninth Circuit Court of Appeals has held that a clause in a contract stating that the federal courts would resolve any disputes arising from the contract constituted an express waiver of a tribe's sovereign immunity. *United States v. Oregon,* 657 F.2d 1009, 1016 (9th Cir. 1981). There is little substantive difference between an agreement that any dispute arising from a contract shall be resolved by

the federal courts and an agreement that any dispute shall be resolved by arbitration; both appear to be clear indications that sovereign immunity has been waived. Accordingly, we hold that Eyak waived whatever immunity from suit it possessed by entering into a contract with GC Contractors containing an agreement that any disputes arising under the contract would be resolved by arbitration.

The judgment of the superior court is AFFIRMED.