15 F.3d 1095
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, ex rel. Jackie YELLOWTAIL,
Plaintiff-Appellant,
v.
LITTLE HORN STATE BANK, a Montana corporation, Defendant-Appellee.
 No. 92-35426.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 3, 1993.
Decided Jan. 11, 1994.
 
 1
 Before: TANG, FARRIS, and RYMER, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Jackie Yellowtail appeals the district court's order dismissing her action for lack of standing under Article III of the United States Constitution. Yellowtail argues the district court erred because, as qui tam relator, she had standing as an assignee in interest of the United States. We have jurisdiction of the timely appeal pursuant to 28 U.S.C. Sec. 1291. We do not decide the question of standing. In addition, we leave the question of whether 25 U.S.C. Sec. 81's qui tam provision is constitutional under the analysis we set forth in United States ex rel. Kelly v. The Boeing Co., 9 F.3d 743 (9th Cir.1993), No. 92-36660, slip op. at 12825 (Nov. 5, 1993), for another day. The loans do not fall within the terms of 25 U.S.C. Sec. 81. We affirm.
 
 
 4
 The core of Yellowtail's appeal is that the Little Horn State Bank's loans to the Crow tribe were subject to the approval of the Secretary of Interior under 25 U.S.C. Sec. 81. We do not agree. The loans were neither "service agreements" or "relative" to Native American lands within the meaning of the statute. Nor were they "relative" to claims under federal law within the meaning of the statute.
 
 
 5
 25 U.S.C. Sec. 81 requires that the contracts be "service agreements." Yellowtail insists that Green v. Menominee Tribe, 233 U.S. 558 (1914) supports her proposition that the lending agreements fit squarely within the definition of service agreements. Green dealt with a sales contract not a lending agreement. See also Wisconsin Winnebago Business Committee v. Koberstein, 762 F.2d 613, 617 (7th Cir.1985) (this "quite ancient" decision does not adequately explain why the statute should apply to such contracts).
 
 
 6
 It would strain the definition of a service agreement to include lending agreements therein. Congress' use of the term services "suggests" that it was concerned about contracts for the representation of Native American interests, not ordinary lending agreements or, for that matter, sales agreements. See Shakopee Mdewakanton Sioux Community, 616 F.Supp. at 1217 (legislative history of section 81 shows that "contractual relations with attorneys and claims agents were foremost on Congress' mind"). See also Cong.Globe, 41st Cong., 3d Sess. 1484, 1484 (Feb. 22, 1871) (comments of Mr. Corbett) ("The object of this section is to protect the Indians and the Government both against ... claim agents.").
 
 
 7
 25 U.S.C. Sec. 81 has been interpreted to encompass a number of agreements not specifically envisioned by the 41st Congress. See, e.g., A.K. Management Co. v. San Manuel Bank of Mission Indians, 789 F.2d 785 (9th Cir.1986) (bingo hall management agreement); Barona Group of Capitan Grande Band of Mission Indians v. American Mgmt. & Amusement Inc., 840 F.2d 1394 (9th Cir.1987) (contract to construct and operate a bingo facility), cert. dismissed, 487 U.S. 1247 (1988). No case has construed a contract to lend money as a service agreement within the meaning of 25 U.S.C. Sec. 81.
 
 
 8
 Also, the lending agreements are neither "relative to [Native American] Lands" nor relative to claims against the federal government. Despite the fact that the phrase "relative to [Native American] lands" was meant to be construed broadly, no case has involved so remote a possible relation as is alleged here. See A.K. Management Co., at 787; Barona, at 1404.
 
 
 9
 Yellowtail argues that the monies involved in the set off, as well as monies implicated in the Security Agreements on the basis of which some of the loans were procured, implicated monies "relative ... to claims growing out of .. annuities, installments, or other monies ... under laws or treaties with the United States...." There is no support for Yellowtail's claims in the record.
 
 
 10
 Assuming for the sake of argument that the monies used in the set off were derived from tribal funds, Yellowtail's claims still fall short. The effect of adopting Yellowtail's position would be to stretch the scope of the statute beyond all contractual agreements for services relative to tribal funds to encompass all actions by non-Native Americans implicating tribal funds. There is no basis for such a result in the statute.
 
 
 11
 The security agreements did not give the Bank control over the alleged tribal funds, nor did the lending agreement turn on the fact that the funds being offered as security were tribal funds and not other funds. The security agreements merely created the possibility that, in the event of nonpayment, the bank could gain control over tribal funds. This possibility does not rise to the level contemplated by the statute or the relevant cases for the term "relative to" whether it modifies Native American lands or tribal funds. See Altheimer & Gray v. Sioux Manufacturing Corp., 983 F.2d 803, 812 (7th Cir.1993).
 
 
 12
 AFFIRMED.
 
 RYMER, Circuit Judge, concurring:
 
 13
 I concur, but I would first decide whether Yellowtail has standing to bring this action. She asserts standing based on the qui tam provision in 25 U.S.C. Sec. 81. This court's recent decision in United States ex rel. Kelly v. Boeing Co., No. 92-3660 (9th Cir. Nov. 5, 1993), calls the constitutionality of that provision into question because Sec. 81, unlike the qui tam provisions of the False Claims Act, 31 U.S.C. Secs. 3729 et seq., which survived constitutional scrutiny in Kelly, affords neither the Executive Branch nor the Tribe control over the litigation, the power to intervene, any way to dismiss a meritless action, or the means to stay the relator's discovery. Because Yellowtail does not argue that she has suffered a cognizable injury in fact sufficient to confer Article III standing, if Sec. 81 fails to pass constitutional muster she has no basis upon which to assert a claim. If a plaintiff lacks standing, the court lacks subject matter jurisdiction over the action. Big Country Foods, Inc. v. Board of Educ., 952 F.2d 1173, 1176 (9th Cir.1992).
 
 
 14
 Although the parties were asked to discuss the impact of Kelly on Yellowtail's standing at oral argument, the issue was not raised in the district court and it was not briefed. I therefore understand my colleagues' declination to deal with it and, as I in any event agree with their analysis on the merits, I concur.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by Ninth Circuit Rule 36-3