United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 07-3269

_____

Oglala Sioux Tribe,                             *
                                                *
        Plaintiff - Appellee,                   *
                                                *       Appeal from the United States
v.                                              *       District Court for the District of
                                                *       South Dakota.
C & W Enterprises, Inc.,                        *
                                                *
        Defendant - Appellant.                  *


_____

Submitted:  June 13, 2008
Filed:  September 5, 2008

_____

Before SMITH and GRUENDER, Circuit Judges, and ROSENBAUM, District
Judge.[1]

_____

ROSENBAUM, District Judge.

        C & W Enterprises, Inc., appeals from a United States District Court for the
District of South Dakota order permanently enjoining the Second Judicial Circuit Court
of South Dakota ("state court") from confirming an arbitration award against the Oglala
Sioux Tribe for lack of subject matter jurisdiction.  We vacate the permanent
injunction, and remand for further proceedings.

_____

        [1]The Honorable James M. Rosenbaum, United States District Judge for the
District of Minnesota, sitting by designation.

I.  Background

    A.  The Oglala Sioux/C & W Construction Contracts

This case has a tortuous procedural history, encompassing no fewer than five different courts and one arbitral forum.  While convoluted, this history is essential to our analysis.

The matter began in 2002, when C & W Enterprises, Inc. ("C & W"), itself a Native American-owned business, entered into four separate contracts with the Oglala Sioux Tribe ("Oglala Sioux" or "Tribe").  The contracts are referred to as the:  (1) Multi-Gravel project; (2) Manderson to Wounded Knee project; (3) Cuny Table project; and (4) Base and Blotter project.  Each contract obligated C & W to perform road construction on the Oglala Sioux Pine Ridge Indian Reservation.

The Oglala Sioux Tribe is federally-recognized.  The contracts were funded by federal funds administered by the Bureau of Indian Affairs, pursuant to the Indian Self Determination Act, 25 U.S.C. § 450 et. seq.

The first three contracts contained explicit clauses waiving the Tribe's sovereign immunity.  Each stated:

> [T]he Oglala Sioux Tribe grants a limited waiver of its immunity for any and all disputes arising from this Contract, including the interpretation of the agreement and work completed or to be completed under the Contract; provided, however, that such waiver extends only to the Oglala Sioux Tribe and Transportation's specific obligations under the Contract; and further provided that such waiver shall extend only to the extent necessary to permit enforcement by the Subcontractor.

The three contracts also provided for Claims Resolution, stating:

> The parties agree to bring any and all claims in the first instance to the Oglala Sioux Tribe Executive Committee for non-binding mediation, and thereafter to the South Dakota Federal District Court, and in the absence of Federal Court jurisdiction, the parties agree to arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association in effect at the time of this Contract. In the event there exists no Federal Court jurisdiction and the parties proceed to arbitration, the award rendered by the arbitrator shall be final, and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof. In the event either party does not timely comply in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, said party waives its right to arbitration and judgment may be entered in the amount in dispute in accordance with applicable law in any court having jurisdiction thereof.

The Base and Blotter contract contained different language, and a different dispute resolution regime:

> The Oglala Sioux Tribal Court will resolve all disputes arising under this contract. Tribal substantive laws regarding contracts shall apply to such disputes. If no tribal substantive laws regarding contracts exist, then the Tribal Court will apply South Dakota law as a guide . . . . The parties agree to bring any and all claims in the first instance to the Oglala Sioux Executive Committee for non-binding mediation presided over by a mutually agreed upon mediator. If mediation fails, then the aggrieved party may initiate a civil action in the Oglala Sioux Tribal Court.

B. Arbitration of Contract Disputes

The paving path did not run smooth. Disputes arose concerning C & W's performance and payment therefor. On August 31, 2005, the parties attempted to resolve their disputes through non-binding mediation by the Oglala Sioux Tribal Executive Committee. The attempts were unsuccessful.

-3-

On January 17, 2006, C & W filed a claim with the American Arbitration Association ("AAA") concerning all four contracts, seeking $6 million. The Tribe communicated to C & W its agreement to arbitrate, and although not required to do so, agreed to include the Base and Blotter project in the arbitration. The Tribe answered C & W's AAA claim, and particularly asserted its own counterclaims under the Base and Blotter contract. It sought damages of over $1.8 million for breach of that contract. The Tribe's answer did not assert sovereign immunity.

The Tribe moved to dismiss certain claims on grounds of sovereign immunity, but not with respect to the Base and Blotter contract. In support of that motion, the Tribe filed a memorandum with the arbitrator, acceding to him consideration of the Base and Blotter contract. The memorandum stated, in part:

> In the Base and Blotter contract, the limited waiver of sovereign immunity extends only to the Oglala Sioux Tribal Court. The Tribe has not objected to the claimant's inclusion of the Base and Blotter claim in the Arbitration Demand, however, for the sake of expediency in resolving the dispute on its merits.

(Oglala Sioux's "Legal Mem. in Supp. of Motion to Dismiss Portion of Claim" 3, May 11, 2006 (see Complaint, Ex. K (06-CV-5063-KES)).) The Tribe fully participated in five months of arbitration – attending hearings, filing a position paper, and serving discovery requests.

On June 23, 2006, the Tribe apparently changed course. It moved the arbitrator to dismiss the Base and Blotter claims from arbitration, claiming sovereign immunity. Rule R-8(a) of the Construction Industry Arbitration Rules of the AAA ("AAA

Rules"), however, confers upon the arbitrator the power to decide issues of jurisdiction and arbitrability. AAA Rule R-8(c) further provides:

> A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection.

The arbitrator denied the motion, finding the Tribe's active participation in arbitrating the Base and Blotter contract waived its immunity.

On August 21, 2006, the Tribe filed its initial action in the United States District Court for the District of South Dakota. It sought to enjoin the arbitrator from hearing, among other things, claims related to the Base and Blotter contract. Oglala Sioux Tribe v. C & W Enterprises, Inc., No. 06-5063, 2006 U.S. Dist. LEXIS 61113, at *3 (D.S.D. Aug. 28, 2006). The district court dismissed that case for lack of federal jurisdiction, and this Court affirmed. Oglala Sioux Tribe v. C & W Enterprises, Inc., 487 F.3d 1129, 1130 (8th Cir. 2007).

Following dismissal of the initial action, the arbitrator commenced a two-week arbitration in Sioux Falls, South Dakota, on August 30, 2006. The record does not disclose either party's objection to that location. On January 29, 2007, the arbitrator entered a final award of $1,250,552.58 in favor of C & W. Following this award, each party filed separate actions: C & W seeking to enforce the award; the Tribe seeking to contest it.

### C. State Court Action to Confirm Arbitration Award

On January 29, 2007, the day of the final arbitration award, C & W filed an action in South Dakota state court to confirm the award. The action was filed pursuant to South Dakota's Uniform Arbitration Act, S.D.C.L. § 21-25A et. seq. The Tribe

was served on February 26, 2007. When the Tribe declined to answer, C & W moved for default judgment. The Tribe, having opted against answering, defaulted; judgment was entered, on May 29, 2007. C & W sought to collect its state court judgment by obtaining executions on Oglala Sioux property located in South Dakota's Hughes and Fall River Counties. On July 10, 2007, the Tribe moved the state court to quash the executions. The action to quash ended on September 28, 2007, however, when the federal court issued the injunction presently before us.

### D. Tribal Court Action to Vacate Arbitration Award

The Tribe filed its own case in the Oglala Sioux Tribal Court, on April 30, 2007, seeking to vacate the arbitration award. C & W defended unsuccessfully, and the Tribal Court vacated the arbitral award, on July 26, 2007. On March 29, 2008, the Supreme Court of the Oglala Sioux Tribe affirmed the Tribal Court's decision vacating the award, but remanded the matter to the Tribal Court to permit C & W's discovery concerning the Tribe's consent to arbitrate the Base and Blotter contract.

### E. Federal Action to Enjoin State Court

The Tribe filed the present matter, on March 16, 2007, in the United States District Court for the District of South Dakota. The Tribe sought: (1) a declaratory judgment holding the South Dakota state court lacked jurisdiction to confirm or allow execution on the arbitral award; (2) an injunction barring the state court from proceeding in these matters; and (3) a declaration that the Oglala Sioux Tribal Court had exclusive jurisdiction to confirm or vacate the award; or (4) alternatively, that the district court vacate the arbitration award. On August 16, 2007, the Tribe moved the district court to stay C & W's state court action.

The district court consolidated the Tribe's motion for temporary relief with its action for declaratory judgment and permanent injunction, pursuant to Fed. R. Civ.

P. 65(a)(2).  On September 10, 2007, the district court found the state court lacked jurisdiction to confirm the arbitral award, and permanently enjoined it from exercising jurisdiction over the matter.  The order vacated the state court's executions, and found the parties must exhaust their Tribal Court remedies respecting the arbitral award.  C & W appeals.

II.  Discussion

    A.  Standard of Review

We have jurisdiction to review C & W's timely interlocutory appeal pursuant to 28 U.S.C. § 1292(a).  We review the district court's grant of a permanent injunction for abuse of discretion.  Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds, 530 F.3d 724, 733 (8th Cir. 2008) (en banc).  "An abuse of discretion occurs where the district court rests its conclusion on clearly erroneous factual findings or erroneous legal conclusions."  Id. (citation omitted).

The standard for issuing a preliminary or permanent injunction is essentially the same, excepting one key difference.  A permanent injunction requires the moving party to show actual success on the merits, rather than the fair chance of prevailing on the merits required for a standard preliminary injunction.  See id. at 732; Randolph v. Rodgers, 170 F.3d 850, 857 (8th Cir. 1999).  If a court finds actual success on the merits, it then considers the following factors in deciding whether to grant a permanent injunction:  (1) the threat of irreparable harm to the moving party; (2) the balance of harms with any injury an injunction might inflict on other parties; and (3) the public interest.  See  Planned Parenthood, 530 F.3d at 729 n.3; Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

B.  Success on the Merits

We begin with the threshold question of whether the Tribe has met its burden of showing actual success on the merits.  Here, actual success turns on the legal question of whether the South Dakota state court has jurisdiction to enforce the arbitral award against the Oglala Sioux Tribe.  We find that it does.

1.  Waiver of Sovereign Immunity

Indian tribes generally enjoy sovereign immunity from contract suits in state court.  Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc., 523 U.S. 751, 760 (1998).  A tribe may be subject to state suit, however, if Congress has expressly abrogated tribal immunity, or the tribe has relinquished its immunity by clear waiver.  C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe, 532 U.S. 411, 418 (2001).  In the absence of any Congressional abrogation, we must examine whether the Oglala Sioux "waived, with the requisite clarity, immunity from the suit [C & W] brought to enforce its arbitration award."  Id.

The Supreme Court considered this question in C & L Enterprises.  There, the Citizen Potawatomi Nation ("Potawatomi tribe") contracted with C & L Enterprises to construct a Potawatomi-owned building at an off-reservation location.  As here, the C & L Enterprises's contract contained an arbitration provision explicitly incorporating the AAA Rules.  That contract further contained a choice of law clause, providing for application of "the law of the place where the Project is located."  Id. at 415.  The Potawatomi tribe abrogated the contract, and C & L Enterprises demanded arbitration.  The Potawatomi tribe replied by asserting sovereign immunity and refusing to arbitrate, after which the arbitrator entered an award for C & L Enterprises.  C & L Enterprises sued in Oklahoma state court to enforce its award.  The Oklahoma trial court rejected the Potawatomi tribe's claimed immunity and confirmed the award. The judgment was ultimately reversed by the Oklahoma Court of Civil Appeals. Id. at 417.

The appellate court found the Potawatomi tribe had not waived its sovereign immunity with the requisite clarity, citing <u>Kiowa</u>.[2]  <u>Id.</u>

The Supreme Court granted certiorari to resolve a conflict between both state and federal courts concerning whether an arbitration clause is an express waiver of tribal immunity for contracts suits.  <u>Id.</u> at 417-18.  The Court found, as this Circuit has done previously, that an arbitration clause alone was sufficient to expressly waive sovereign immunity to a state court enforcement action.  <u>See id.</u> at 417-23 (citing <u>Rosebud Sioux Tribe v. Val-U Constr. Co.</u>, 50 F.3d 560, 562 (8th Cir. 1995); <u>Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Associates, Inc.</u>, 86 F.3d 656, 661 (7th Cir. 1996); <u>Native Village of Eyak v. GC Contractors</u>, 658 P.2d 756 (Alaska 1983); <u>Val/Del, Inc. v. Superior Court</u>, 703 P.2d 502 (Ariz. Ct. App. 1985)).

---

[2]The Oklahoma Court of Civil Appeals initially affirmed the trial court's order "holding that the Tribe lacked immunity because the contract giving rise to the suit was between an Indian tribe and a non-Indian and was executed outside of Indian Country." <u>C & L Enterprises</u>, 532 U.S. at 416 (quotations omitted).  The Oklahoma Supreme Court denied review, but the United States Supreme Court granted certiorari, vacated the appellate court's decision, and remanded for reconsideration in light of <u>Kiowa</u>, which had been decided while the contractor's petition for certiorari was under review. <u>Id.</u> at 416-17.  On remand from the United States Supreme Court, the Oklahoma Court of Civil Appeals reversed its prior decision finding that, although the arbitration clause indicated the Potawatomi tribe was willing to waive immunity, the immunity clause did not meet <u>Kiowa's</u> standard with sufficient clarity.  <u>Id.</u> at 417.  The Oklahoma Supreme Court again denied review. The Supreme Court accepted certiorari and reversed the Civil Appeals Court's post-remand decision.  <u>Id.</u> at 414, 417-18.

The Court found C & L Enterprises's arbitration clause expressly waived the Potawatomi tribe's sovereign immunity, holding:

> [The arbitration clause] has a real world objective; it is not designed for regulation of a game lacking practical consequences. And to the real world end, the contract specifically authorizes judicial enforcement of the resolution arrived at through arbitration. 'We believe it is clear that any dispute arising from a contract cannot be resolved by arbitration, as specified in the contract, if one of the parties intends to assert the defense of sovereign immunity . . . . The arbitration clause . . . would be meaningless if it did not constitute a waiver of whatever immunity the Tribe possessed.'

C & L Enterprises, 532 U.S. at 422 (quoting Eyak, 658 P.2d at 760).

The Supreme Court looked to the AAA Rules expressly incorporated into the agreement which provide, "the arbitration award may be entered in any federal or state court having jurisdiction thereof." Id. at 419 (quoting AAA Rules R-48(c)). The Court particularly noted that foreign nations - entities possessing full, rather than limited sovereignty - which enter arbitration agreements waive their immunity regarding enforcement of the awards arising from those contracts. Id. at 421 n.3.

### 2. Contractual Waiver of Immunity

In the matter now before us, unlike C & L Enterprises's contract, three of the parties' contracts contain an explicit immunity waiver stating "the Oglala Sioux Tribe grants a limited waiver of its immunity for any and all disputes arising from this Contract." See supra. The words are unambiguous. And, as in C & L Enterprises, the parties agreed to arbitrate any contractual disputes, absent federal jurisdiction.

The first three contracts specifically provide: "[T]he award rendered by the arbitrator shall be final, and judgment may be entered upon it in accordance with the

applicable law in any court having jurisdiction thereof." See supra. As the Supreme Court discussed in C & L Enterprises, the arbitration agreement alone is enough to waive immunity. We find that, in the three contracts containing an explicit waiver of immunity and an agreement to arbitrate, the Tribe has waived sovereign immunity with respect to a suit brought to enforce an arbitral award.

We consider the effect of C & L Enterprises's choice of law provision separately, below.

### 3. Immunity and the Base and Blotter Contract

There is no contractual waiver of the Tribe's sovereign immunity in the Base and Blotter contract. The Base and Blotter contract contained the Tribe's consent to suit in its Tribal Court, with no arbitration provision. A sovereign tribe has full authority to limit any waiver of immunity to which it consents. See Missouri River Svcs. v. Omaha Tribe of Neb., 267 F.3d 848, 852 (8th Cir. 2001). Absent any other facts, the Tribe's immunity to C & W's state court suit would remain intact. But other facts developed.

C & W's arbitration demand included claims arising from the Base and Blotter contract. The Tribe not only raised no objection, it responded, raising its own arbitral counterclaims under the same contract. The Tribe then went further. In a legal memorandum to the arbitrator, the Tribe first noted the Base and Blotter contract's written waiver extended only to the Oglala Sioux Tribal Court. But as the Tribe explicitly stated: "The Tribe has not objected to the claimant's inclusion of the Base and Blotter claim in the Arbitration Demand, however, for the sake of expediency in resolving the dispute on its merits." See supra. Wholly mindful that a waiver of sovereign immunity must be clearly expressed, we hold that, under these conditions, where there are contractual arbitration agreements and a tribe actively participates in that arbitration, and in the course of that arbitration raises its own affirmative claims

-11-

involving a clearly-related matter, the Tribe voluntarily and explicitly waives any immunity respecting that related matter.

We recognize, also, the AAA Rules requiring jurisdictional objections to be filed in the answer. Here, when the Tribe actively opted into the arbitration - including the Base and Blotter contract - it bound itself to the AAA's rules and the procedural regime they encompass. If a tribe were allowed to operate under AAA rules, and after an adverse decision assert sovereign immunity and then walk away, it would convert sovereignty from a shield into a sword. A tribe could, with impunity, thumb its nose at authority to which it had voluntarily acquiesced. Sovereignty does not extend so far.

### 4. State Court Jurisdiction

Having found the Tribe waived its sovereign immunity on all four contracts, we must consider whether its waiver extends to South Dakota state court enforcement. We find it does.

The parties opted to use arbitration, and in doing so, opted for the AAA's Rules.[3] Three contracts specifically incorporate those Rules. The Rules themselves provide "[t]he parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the [AAA]." AAA R-1(a). The Rules further provide that "[p]arties to these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof." AAA R-49(c). This is certainly not a limitation requiring recourse to the Tribal Court.

_____

[3]As the Supreme Court noted in C & L Enterprises, the AAA Rules "are not secondary interpretive aides that supplement our reading of the contract; they are prescriptions incorporated by the express terms of the agreement itself." C & L Enterprises, 532 U.S. at 419 n.1.

-12-

The three contracts which included an arbitration clause specifically state: "[T]he award rendered by the arbitrator shall be final, and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof." <u>See supra</u>. We reject the Tribe's contention that it waived immunity only to suit in Tribal Court - that is not what the contracts say. The parties could have made such an agreement, but did not do so. Indeed, the text of the Base and Blotter contract makes this precise choice. And any express limitation imposed by the Tribe on its consent to suit would have been duly recognized. <u>See</u> <u>Missouri River</u>, 267 F.3d at 852-54.

Once a party opts for, and participates in, arbitration, however, it is bound by the arbitrator's decisions. Sioux Falls, South Dakota, was the site chosen for the hearing without objection. Under AAA Rule R-11, even in the face of an objection, "the AAA shall have the power to determine the locale, and its decision shall be final and binding." By choosing a hearing forum in South Dakota, the arbitrator ultimately decided which court would have jurisdiction to confirm the award.

South Dakota's Uniform Arbitration Act provides:

> The term 'court' means a circuit court of this state. The making of an agreement described in § 21-25A-1 providing for arbitration in this state confers jurisdiction on the court to enforce the agreement under this chapter and to enter judgment on an award thereunder.

S.D.C.L. § 21-25A-4. When it agreed to arbitrate disputes and incorporated the AAA's claim resolution procedures into the contracts, and when it participated in the South Dakota arbitration, the Tribe acquiesced in the arbitrator's decision, placing jurisdiction over the award in South Dakota's courts. Once the Tribe waived its immunity by agreeing to arbitration, it "constitute[d] a waiver of whatever immunity the Tribe possessed." <u>C & L Enterprises</u>, 532 U.S. at 422 (citation omitted).

## 5. C & L Enterprises's Choice of Law Provision

The Oglala Sioux ask us to focus on a distinction between one fact in this case, and another in C & L Enterprises: C & L Enterprises's contract contained a choice of law provision. We consider that fact collateral to the C & L Enterprises decision. The Supreme Court noted the choice of law provision made it "plain enough" that the Potawatomi tribe had waived immunity to suit in Oklahoma, id. at 419. Fairly read, however, it is clear the C & L Enterprises decision does not depend on this provision.

In deciding C & L Enterprises, the Supreme Court favorably cited multiple lower court cases finding tribes subject to state court suits premised on arbitration agreements alone. See id. at 417-23 (citing Rosebud Sioux Tribe v. Val-U Constr. Co., 50 F.3d 560, 562 (8th Cir. 1995); Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Associates, Inc., 86 F.3d 656, 661 (7th Cir. 1996); Eyak, 658 P.2d at 760; Val/Del, Inc. v. Superior Court, 703 P.2d 502 (Ariz. Ct. App. 1985)).

Going further, the Supreme Court said, due to C & L Enterprises's choice of law provision, it did not need to address the argument that tribal waivers should be subject to the same limitations as state waivers of immunity. Under state sovereign immunity jurisprudence, ambiguous waivers of sovereign immunity are construed narrowly and limited to a state's consent only to be sued in its own courts. See id. at 421 n.4. As we perceive no ambiguity in the contract before us - indeed, no party has suggested ambiguity - we find no reason to decide this question either.

We also decline to adopt a view that the work's locus, vis-a-vis the reservation's borders, distinguishes C & L Enterprises. Here, the work was performed on reservation land. In the C & L Enterprises project, it was done off-reservation. Kiowa establishes that whether a state court has jurisdiction over a tribe depends on whether the tribe has waived its immunity. Kiowa, 523 U.S. at 754. In deciding the question of whether a tribe has waived immunity to a state court action brought to enforce an

arbitration agreement, not a single case cited in C & L Enterprises concerned itself with the performance-location of the contracted service. We do not do so either. Once a waiver of immunity is established, state court jurisdiction depends on whether state law provides jurisdiction over a given subject matter. Here, the state court has jurisdiction because the arbitration occurred in South Dakota, see S.D.C.L. § 21-25A-4; the locus of the work is irrelevant.

In light of the Tribe's agreement to, and full participation in, the arbitration proceedings held in South Dakota, we find the South Dakota state court has jurisdiction to confirm the arbitral award and enter judgment thereon.

### C. Other Dataphase Factors

Having found the Oglala Sioux Tribe waived its sovereign immunity, and having found state court jurisdiction to confirm the arbitral award, the Tribe has - necessarily - failed to show any likelihood of success on the merits. Accordingly, we find it unnecessary to assess the remaining factors for injunctive relief. See Planned Parenthood, 530 F.3d at 732.

### III. Conclusion

Our determinations compel the conclusion that the lower court's injunction and declaration of rights were premised on a manifest error of law and were, perforce, an abuse of discretion.

For these reasons, we vacate the previously issued permanent injunction, and remand for further proceedings in accord with this opinion.

_____