[No. B009158. Second Dist., Div. Four. July 23, 1985.]

HYDROTHERMAL ENERGY CORPORATION,
Plaintiff and Respondent, v.
FORT BIDWELL INDIAN COMMUNITY COUNCIL,
Defendant and Appellant.

490

COUNSEL

Marilyn B. Miles and Mary J. Risling for Defendant and Appellant.

Don Erik Franzen for Plaintiff and Respondent.

OPINION

**WOODS, P. J.**—■■ ■■ ■■ ■■ Fort Bidwell Indian Community Council (the Council), which is the governing body for the Fort Bidwell Indian

Community (the Tribe), appeals the judgment confirming an arbitrator's award in favor of respondent Hydrothermal Energy Corporation (HEC).[1]

The Council contends that confirmation was erroneous because California lacked jurisdiction over the Tribe and the Tribe was immune from suit. HEC counters that the Council waived its sovereign immunity by executing a contract containing an arbitration clause and that the Council is bound by the arbitrator's decision on arbitrability as it submitted that issue to the arbitrator. We reverse on the ground that the facts do not show an unequivocal waiver of immunity by the Council.

This case involves two contracts between HEC and the Council. Under the contracts, HEC was to render to the Tribe educational services regarding geothermal energy systems and adult basic education. Both contracts contain clauses that, upon written request, any dispute regarding payment to HEC would be referred for arbitration before the American Arbitration Association in Los Angeles. The contracts further provided that "[a]ny court of competent jurisdiction" could enter judgment based on the arbitrator's decision. Lucinda Lame Bull's signature appears at the end of the contracts above the designation, "FORT BIDWELL INDIAN COMMUNITY COUNCIL."

In April 1983, HEC notified the Council and Lucinda Lame Bull that it was demanding arbitration as it had substantially performed on the contracts and had not been paid. HEC sought the contract price of $41,835 plus $1,000 in consequential damages.

The record contains a partial transcript of the arbitration proceedings in August of 1983. Mr. Wright, attorney for the Council, argued that the agreement was invalid both because the Secretary of the Interior's signature had not been obtained and because the Council lacked the power to waive the Tribe's immunity. Reference was made to written briefs which are not before us. Mr. Wright emphasized that "the tribe has not waived any aspect of immunity by appearing here in order to object to jurisdiction of the American Arbitration Association and any subsequent courts to which a decision may be submitted." At the conclusion of argument, the parties agreed to recess for a determination of arbitrability, and reconvene after lunch if the arbitrator found that the matter was arbitrable.

While we have been given no transcript of the rest of the hearing, the record contains the arbitrator's decision, which is entitled, "PARTIALLY EX-PARTE AWARD OF ARBITRATOR." It indicates the arbitrator considered "the

---

[1]The judgment is appealable. (Code Civ. Proc., § 1294.)

proofs and allegations of the Parties . . . as to the Issue of Arbitrability and of the Claimant as to matters of substantive claim, the Respondent having withdrawn from the hearing, . . .'' The Council had appeared solely ''to contest the arbitrability of the disputes here in issue,'' arguing (1) that the Tribe had not waived its sovereign immunity and (2) that the contracts were unenforceable due to noncompliance with 25 United States Code section 81, which requires that certain contracts with Indian tribes or Indians be approved by the Secretary of the Interior and the Commissioner of Indian Affairs.[2] It had submitted additional briefs and argument, to which HEC had responded.

In rejecting the counsel's arguments, the arbitrator found that the arbitration clause constituted a waiver of immunity, and that the contracts were not subject to 25 United States Code section 81. She further found no basis for a finding of personal liability against Lucinda Lame Bull, who had acted at all times in her official capacity as chairman and chief executive officer of the Council. She then considered the ''undisputed'' testimony of HEC concerning the work which had been accomplished under the contracts. The conclusion was that HEC was entitled to $41,585 contract damages plus attorney's fees and arbitration administrative fees.

HEC then petitioned the superior court for confirmation of the arbitration award. The Council filed an ''Objection to Jurisdiction and Response to Petition.'' Among its arguments were that the Tribe was immune from suit and had not waived that immunity; there was no valid agreement to arbitrate because the contracts lacked the approval required by 25 United States Code section 81; and Lucinda Lame Bull lacked the authority to enter into a contract on behalf of the Tribe because under the Tribe's constitution and bylaws only the Council could do so.

The documents and declarations filed in support of the opposition explained that the Tribe had terminated the program because HEC's training had involved proselytizing by the teachers for the Church of Scientology. Students had been required to study Scientology materials and perform ex-

---

[2] 25 United States Code section 81 states in pertinent part: ''No agreement shall be made by any person with any tribe of Indians, or individual Indians not citizens of the United States, for the payment or delivery of any money or other thing of value, in present or in prospective, or for the granting or procuring any privilege to him, or any other person in consideration of services for said Indians relative to their lands, or to any claims growing out of, or in reference to, annuities, installments, or other moneys, claims, demands, or thing, under laws or treaties with the United States, or official acts of any officers thereof, or in any way connected with or due from the United States, unless such contract or agreement be executed and approved as follows: [¶] . . . . [¶] Second. It shall bear the approval of the Secretary of the Interior and the Commissioner of Indian Affairs indorsed upon it.''

ercises such as staring at each other for minutes at a time. A picture of Scientology teacher L. Ron Hubbard was hung in the classroom, and students were required to write to him. These activities violated a prohibition against religious proselytization which existed in the contract between HEC and the California Indian Manpower Consortium, Inc., which was administering the educational services contracts for the Tribe.

Lucinda Lame Bull stated by declaration that she had signed the contracts after an HEC agent represented that she had to catch an airplane and needed an immediate signature for limited bookkeeping purposes. According to Ms. Lame Bull, the agent had been informed that tribal procedure for contract approval required participation by a quorum of the Council.

In May of 1984, Judge John L. Cole granted the petition for confirmation. The judgment reads that the petition should be granted, "[p]roof having been made to the satisfaction of the court that the arbitrator had jurisdiction to make her award and there being no grounds upon which said award may be vacated, . . ." The court's minutes state: "If this was a petition to compel arbitration, then under CCP section 1281.2 it could have been argued that the contract in issue here, which undeniably contains an arbitration clause, was void under 25 USC section 81 because it was one for the the [*sic*] payment of money within the scope of the statute. But, this is not a petition to compel arbitration. It is a petition to confirm an arbitration award. [¶] The record shows that the [Council] submitted the issue of arbitrability to the arbitrator and that the latter decided against [the Council's] claims of sovereign immunity and voidness of contract under 25 USC section 81. [¶] An arbitrator may decide questions of jurisdiction, and even if they are decided wrongly there is no right, as [HEC] phrases it, to a second bite at the judicial apple. [The Council's] other claims that the arbitrator decided issues not submitted to her and that she decided them wrongly are belied by the contract in the first instance and not open to re-examination here in the second. [¶] Granted. Counsel for [HEC] to prepare a form of judgment."

I

The Council argues that there was no jurisdiction as it could not consent to a waiver of immunity since only Congress can authorize such a waiver.[3]

---

[3]While it is the Council and not the Tribe which was a party below and on appeal, the parties equate the Council's immunity with that of the Tribe. We do the same.

Through 28 United States Code section 1360,[4] Congress has given California "jurisdiction over civil causes of action *between Indians* or *to which Indians are parties* arising in Indian country to the same extent that such courts have jurisdiction over other civil causes of action." (*Long* v. *Chemehuevi Indian Reservation* (1981) 115 Cal.App.3d 853, 856 [171 Cal.Rptr. 733]; italics in original.) However, jurisdiction under section 1360 does not extend to the tribes themselves. (*Ibid.; Bryan* v. *Itasca County* (1976) 426 U.S. 373, 389 [48 L.Ed.2d 710, 721, 96 S.Ct. 2102].)

Our Supreme Court recently discussed tribal immunity in *People* ex rel. *Dept. of Transportation* v. *Naegele Outdoor Advertising Co.* (1985) 38 Cal.3d 509, 519 [213 Cal.Rptr. 247, 698 P.2d 150], stating: ■ ". . . Indian tribes are immune from suit in the absence of an effective waiver *or consent. (Puyallup Tribe* v. *Washington Game Dept.* (1977) 433 U.S. 165, 172 [53 L.Ed.2d 667, 674, 97 S.Ct. 2616].) ■ The Supreme Court has held that, while Congress can authorize suits against Indian Nations, a waiver of sovereign immunity cannot be implied but must be unequivocally expressed. (*Santa Clara Pueblo* v. *Martinez* (1978) 436 U.S. 49, 58 [56 L.Ed.2d 106, 115, 98 S.Ct. 1670].)" (Italics added; fn. omitted.)

In the *Puyallup Tribe* case, cited in *Naegele Outdoor Advertising,* the United States Supreme Court found that a Tribe had retained its immunity, as there has been no showing "that either the Tribe or Congress has waived its claim of immunity or consented to the entry of an order against it." (*Puyallup Tribe* v. *Washington Game Dept., supra,* 433 U.S. 165, 173.) ■ That language was relied upon in *United States* v. *State of Or.* (9th Cir. 1981) 657 F.2d 1009, 1013, which held that "Indian tribes may consent to suit without explicit Congressional authority." As *State of Oregon* further discussed, this holding is consistent both with conclusions of other circuits and with public policy considerations such as tribal self-determination and encouraging non-Indians to enter into contracts with the tribes.

We find the logic of *State of Oregon* to be compelling on this point, as did the Alaska Supreme Court in *Native Village of Eyak* v. *GC Contractors* (Alaska 1983) 658 P.2d 756, 759.) We further agree with *Native Village of*

---

[4]Title 28 United States Code section 1360(a) provides: "Each of the States . . . listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed . . . to the same extent that such State . . . has jurisdiction over other civil causes of action, and those civil laws of such State . . . that are of general application to private persons or private property shall have the same force and effect within such Indian Country as they have elsewhere within the State. . . ." California is one of the states listed.

*Eyak* that cases which state that tribes are exempt from suit without congressional authorization (*United States* v. *U.S. Fidelity Co.* (1940) 309 U.S. 506, 513 [84 L.Ed. 894, 899, 60 S.Ct. 653]; *People of State of Cal.* v. *Quechan Tribe of Indians* (9th Cir. 1979) 595 F.2d 1153, 1155; *Long* v. *Chemehuevi Indian Reservation, supra,* 115 Cal.App.3d at p. 856), do not mean that only Congress can waive tribal immunity, as the issue of whether the tribes themselves had that power was not before those courts. Indeed, in *Long* v. *Chemehuevi Indian Reservation, supra,* at page 856, although the court stated that tribes "cannot be sued without the consent of Congress," it later assumed in a footnote, without deciding the issue, "that a tribe may unilaterally waive its sovereign immunity . . . ." (*Long, supra,* at p. 860, fn. 7.)

Moreover, subsequent ninth circuit decisions have reiterated the rule that either Congress or the Tribe may waive the Tribe's immunity. (*Snow* v. *Quinault Indian Nation* (9th Cir. 1983) 709 F.2d 1319, 1321; *Chemehuevi Ind. Tribe* v. *Cal. St. Bd. of Equal.* (9th Cir. 1985) 757 F.2d 1047, 1050, fn. 3.)

We therefore hold that the Tribe had the power to waive its immunity and consent to jurisdiction by the state court. The question is did it do so.

II

In finding a tribal waiver of immunity, the arbitrator relied upon *United States* v. *State of Oregon, supra,* 657 F.2d 1009, and *Native Village of Eyak* v. *GC Contractors, supra,* 658 P.2d 756.

In the *State of Oregon* case, an Indian tribe intervened in an action involving treaty fishing rights, and later signed a conservation agreement which included a promise to tender disputes to the Oregon district court. When the Oregon court issued an injunction banning Chinook salmon fishing, the tribe appealed. The Ninth Circuit's opinion found that the tribe had consented to suit both by intervening in the lawsuit and by agreeing to submit disputes to the Oregon district court. (657 F.2d at pp. 1014-1016.)

In *Native Village of Eyak,* the tribe had entered into a contract which included a clause that disputes were to be resolved by arbitration. The Alaska Supreme Court held that the arbitration clause constituted an unequivocal expression of waiver of the tribe's immunity, relying on the similar result in the *State of Oregon* case. (*Native Village of Eyak, supra,* 658 P.2d at p. 760.)

There is an important distinction between those cases and the one at bench. Both cases simply state that the tribe signed or entered into contracts. Here, Ms. Lame Bull signed for the Council purportedly for a limited bookkeeping purpose. Thus, this case contains a question of the authority of the tribal chairman which was not present in either case relied on by the arbitrator.

In *Red Lake Band of Chippewa Indians* v. *American Arbitration Association et al.,* Civ. No. 4-81-262 (D.Minn. July 13, 1981) 8 Indian L. Rep. 3114, the district court granted a preliminary injunction to restrain arbitration under an arbitration clause in a contract signed by the chairman, secretary and treasurer of an Indian tribe. In finding that those officers lacked the power to waive the tribe's immunity, the court relied upon *United States* v. *U.S. Fidelity Co., supra,* 309 U.S. at pages 512-513 [84 L.Ed. at pp. 898-899].[5] In that case, the United States Supreme Court rejected a contention that certain tribes had waived their immunity by not objecting to jurisdiction in earlier court proceedings, stating: "It is a corollary to immunity from suit on the part of the United States and the Indian Nations in tutelage that this immunity cannot be waived by officials. If the contrary were true, it would subject the Government to suit in any court in the discretion of its responsible officers. This is not permissible." (*United States* v. *U.S. Fidelity Co., supra,* at p. 513; fn. omitted.)

■ Thus, Ms. Lame Bull could not waive the tribe's immunity, unless the Tribe had expressly delegated that duty to her. Nothing in the Tribe's constitution and bylaws gave her such authority. That document states: "It shall be the duty of the chairman of the community council to preside at all meetings of the council and to carry out all order [*sic*] of the council. The chairman of the council shall also preside at the general community meetings. The chairman shall also be the chief executive officer of the community." Those words do not indicate that the Tribe authorized the chairman to waive its immunity. We therefore find that Ms. Lame Bull's signature did not bind the Tribe to accept jurisdiction before the arbitrator.[6] The arbitrator's decision that the American Arbitration Association had jurisdiction was based on an erroneous finding of waiver by execution of the contract.

---

[5]The *Red Lake Band* case also stated that only Congress can waive the tribe's immunity. (8 Indian L. Rep. at p. 3114.) We reject that proposition of law for the reasons discussed in argument I, *supra.*

[6]We express no opinion on whether the arbitrator was also wrong in finding that the contracts were not subject to the approval requirements of 25 United States Code section 81.

## III

Even though the arbitrator's decision on arbitrability was wrong, there remains the question of whether the Council is bound by it, having submitted that issue for the arbitrator's determination.

■ It is clearly the law in California that a party "may not agree to arbitrate a question and then, if the decision goes against it, litigate the question in another proceeding." (*O'Malley* v. *Petroleum Maintenance Co.* (1957) 48 Cal.2d 107, 110 [308 P.2d 9].)

In *Interinsurance Exch.* v. *Bailes* (1963) 219 Cal.App.2d 830 [33 Cal.Rptr. 533], we affirmed a superior court order confirming an arbitrator's award, even though we found that the arbitrator had erred in determining the applicability of the doctrine of res judicata. Justice Kingsley's opinion states: "[W]e agree with the conclusion of the trial court in the confirmation proceedings that the decision of the arbitrator, whether or not correct, cannot be assailed in this proceeding. . . . [A] decision of an arbitrator is binding, whether or not correct either in law or in fact." (*Id.*, at p. 834.)

Again in *Fidelity & Cas. Co.* v. *Dennis* (1964) 229 Cal.App.2d 541, 543 [40 Cal.Rptr. 418], we held that since the issue of whether certain insurance coverage was arbitrable had been raised before and determined by the arbitrator, that determination was binding upon the superior court in confirmation proceedings.

In *Kemper* v. *Schardt* (1983) 143 Cal.App.3d 557 [192 Cal.Rptr. 46], the appellant sought to vacate an arbitration award on the ground that he was a German native who spoke, but could not read, English and that the respondent had intentionally failed to inform him of the existence of an arbitration clause in their written agreement. *Kemper* ruled that an arbitrator's authority to act is properly disputed by filing a petition in the superior court to restrain the arbitration. The court held that, once a party has unsuccessfully argued the issue of the invalidity of an agreement containing an arbitration clause before an arbitrator, it cannot seek a different result in the superior court. "Admittedly, parties cannot confer jurisdiction upon a court; but unlike a court of law, an arbitrator may herein decide any issue which the parties willingly present to it." (*Id.*, at p. 561. See also *University of San Francisco Faculty Assn.* v. *University of San Francisco* (1983) 142 Cal.App.3d 942, 953-954 [191 Cal.Rptr. 346].)

It is difficult to discern a critical factual distinction between the preceding cases and the one at bench. Despite the lack of Lucinda Lame Bull's au-

thority to execute the contract one could readily conclude, as the trial court did, that the Council, having submitted the issue of arbitrability to the arbitrator, waived its sovereign immunity. ■ The cases tell us, however, that "a waiver of sovereign immunity cannot be implied but must be unequivocally expressed. [Citation.]" (*People* ex rel. *Dept. of Transportation* v. *Naegele Outdoor Advertising Co., supra,* 38 Cal.3d at p. 519; *Santa Clara Pueblo* v. *Martinez* (1978) 436 U.S. 49, 58 [56 L.Ed.2d 106, 115, 98 S.Ct. 1670].) It would defy logic to find that the Tribe *expressly* waived its immunity by having its attorney appear before an arbitrator and declare that it was not waiving any aspect of its immunity by that appearance but was there to protest the proceedings. The Tribe's appearance and argument can at best be said to have constituted an implied waiver, which is legally insufficient.

We therefore hold that the trial court erred in confirming the arbitration award.

The judgment is reversed.

McClosky, J., and Arguelles, J., concurred.

A petition for a rehearing was denied August 9, 1985, and respondent's petition for review by the Supreme Court was denied October 30, 1985.