*1343
 
 Opinion
 

 JONES, J.
 

 We granted this petition for writ of review
 
 [1]
 
 to consider whether the Workers’ Compensation Appeals Board (Appeals Board) has subject matter jurisdiction over a federally recognized Indian tribe, Middletown Ranchería of Pomo Indians, doing business as Twin Pine Casino (Tribe), for purposes of enforcing California’s workers’ compensation laws.
 

 Tribe contends that neither Congress nor Tribe has waived its sovereign immunity from liability under California’s workers’ compensation laws. We agree. The Appeals Board does not possess subject matter jurisdiction over Tribe as a matter of law. For the reasons discussed below, we conclude: (1) Tribe enjoys sovereign immunity from state regulation of the employment affairs of Tribe and its members; (2) Public Law No. 280 section 4, codified at 28 United States Code section 1360, is not an explicit congressional waiver of Tribe’s sovereign immunity from state worker’s compensation liability; (3) Tribe has not waived its sovereign status; (4) California’s workers’ compensation laws unquestionably are “civil/regulatory,” not “criminal/prohibitory,” under
 
 Bryan
 
 v.
 
 Itasca County
 
 (1976) 426 U.S. 373 [96 S.Ct. 2102, 48 L.Ed.2d 710]; (5) nothing in
 
 California
 
 v.
 
 Cabazon Band of Mission Indians
 
 (1987) 480 U.S. 202 [107 S.Ct. 1083, 94 L.Ed.2d 244]
 
 (Cabazon),
 
 alters
 
 Bryan,
 
 hence the Appeals Board’s interpretation of
 
 Cabazon
 
 is clearly erroneous.
 

 Background
 

 Tribe is a federally recognized Indian tribe and the beneficial owner of the Middletown Rancheria of Pomo Indians, an Indian reservation. Tribe is the owner and operator of a tribal gaming business known as Twin Pine Casino, which is located within the exterior boundaries of the reservation land, held in trust by the United States for the beneficial use of the Tribe. Tribe has operated the gaming casino since approximately January 1995. Tribe is insured for workers’ compensation liability by Native American Insurance Company and SRT Corporation, Phoenix, Arizona. The nature and adequacy of the workers’ compensation coverage provided are not at issue.
 

 Tribe employs approximately 117 employees at the casino. Of these employees, approximately 10 to 12, including respondent real party in
 
 *1344
 
 interest, Glen Sherron, are not tribal members. Sherron was employed as a maintenance worker at the casino. He claims to have sustained a work injury on July 9, 1995, to his left eye when it was poked by a tree branch while he was putting garbage in a dumpster. Following the injury, Sherron sought medical treatment which was paid for by Tribe’s insurance carrier. He was also paid his full salary for “a few hours or a day” of work which he missed as a result of the eye injury.
 

 On July 28, 1995, Sherron filed an application for adjudication of claim with the Appeals Board and some months thereafter filed a declaration of readiness to proceed to hearing. On December 28, 1995, Tribe filed a motion to dismiss based on lack of jurisdiction and sovereign immunity.
 

 At a trial on the issue of jurisdiction, the workers’ compensation judge (WCJ) heard testimony from Stephanie Leilani Reyes, casino general manager, concerning the availability of workers’ compensation benefits for industrial injuries. When a tribal employee is injured at work, an incident report is filled out and sent to the Tribe’s personnel department, which in turn forwards it to Tribe’s workers’ compensation carrier. Any injured employee who is dissatisfied with the manner in which an injury claim has been handled by the insurance carrier may appear before the tribal council, Tribe’s governing body, elected by the general council which is comprised of all members who are lineal descendants of the Middletown Ranchería. Tribe does not conduct a separate forum for workers’ compensation disputes.
 

 In his findings of fact and opinion on decision, the WCJ found Sherron’s employment for Tribe within the jurisdiction of the Appeals Board, citing in particular, “28 USC Section 1360 (part of Public Law 280),”
 
 Cabazon, supra,
 
 480 U.S. 202, and article XIV of the California Constitution. Commenting on the existence of a forum for appeal, the WCJ stated that “[the Tribe] has no workers’ compensation forum set up in which to allow injured workers to appeal.”
 
 [2]
 

 
 *1345
 
 The WCJ recommended that Tribe’s petition for reconsideration be denied. The Appeals Board adopted the WCJ’s report and recommendation on petition for reconsideration. Tribe’s petition for writ of review followed.
 

 Discussion
 

 The Jurisdictional Issue
 

 At the center of the jurisdictional issue before this court is the proper construction of 28 United States Code section 1360.
 
 [3]
 
 Section 1360(a) gives certain states, including California, jurisdiction over civil disputes that involve Native American Indians and arise in Indian country. However, section 1360(b) limits the scope of such state power and jurisdiction. It provides
 
 *1346
 
 that section 1360(a) does not authorize the “alienation, encumbrance, or taxation of any real or personal property . . . belonging to . . . any Indian tribe, band or community”; nor does it authorize the “regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto.” Finally, section 1360(b) does not “confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of [Native American Indian] property or any interest therein.”
 

 A.
 
 Native American Indian Sovereignty
 

 Essential to the proper application of section 1360 is an understanding of the historically complex relationship between federal, state and tribal governments in their competition for jurisdiction over Indian land and affairs. (See generally,
 
 Boisclair
 
 v.
 
 Superior Court
 
 (1990) 51 Cal.3d 1140, 1147-1149 [276 Cal.Rptr. 62, 801 P.2d 305] (Boisclair); Royster & Fausett,
 
 Control of the Reservation Environment: Tribal Primacy, Federal Delegation, and the Limits of State Intrusion (1989) 64
 
 Wash. L.Rev. 581; Gould,
 
 The Consent Paradigm: Tribal Sovereignty at the Millennium
 
 (1996) 96 Colum. L.Rev. 809 [comprehensive reviews of federal preemption, Native American Indian sovereignty and state authority over Indian affairs].) Federal authority over Native American Indian matters derives primarily from the power to regulate commerce with Native American Indian tribes (U.S. Const., art. I, § 8, cl. 3) and secondarily from the power to make treaties (U.S. Const., art. II, § 2, cl. 2). (See generally, Hansen,
 
 Survey of Civil Jurisdiction in Indian Country 1990
 
 (1991) 16 Am. Indian L.Rev. 319, 321, fn. 18, citing
 
 McClanahan
 
 v.
 
 Arizona State Tax Comm’n
 
 (1973) 411 U.S. 164, 172, fn. 7 [93 S.Ct. 1257, 1262, 36 L.Ed.2d 129].) The United States Constitution is silent regarding state action in these areas. A review of the evolving decisional law makes clear the federal government’s predominance over Native American Indian affairs in general and over Indian land in particular. (Hansen,
 
 op. cit. supra,
 
 at p. 324.)
 

 In 1832 Chief Justice John Marshall declared that Native American Indian tribes were wholly distinct nations within whose boundaries “the laws of [a State] can have no force.”
 
 (Worcester
 
 v.
 
 The State of Georgia
 
 (1832) 31 U.S. (6 Pet.) 515, 561 [8 L.Ed. 483, 501].) To this day, we find deeply rooted in our jurisprudence the policy of leaving Native American Indians free from state jurisdiction and control.
 
 (McClanahan
 
 v.
 
 Arizona State Tax Comm’n, supra, 411
 
 U.S. 164, 168 [93 S.Ct. 1257, 1260].) In
 
 Oklahoma Tax Comm’n
 
 v.
 
 Potawatomi Tribe (1991) 498
 
 U.S. 505 [111 S.Ct. 905, 112 L.Ed.2d 1112], the Supreme Court refused to narrow the doctrine of sovereign immunity:
 
 *1347
 
 “Congress has always been at liberty to dispense with such tribal immunity or to limit it. Although Congress has occasionally authorized limited classes of suits against Indian tribes, . . . Congress has consistently reiterated its approval of the immunity doctrine.”
 
 (Id.
 
 at pp. 509-510 [111 S.Ct. at pp. 909-910].) Moreover, our state Supreme Court steadfastly recites that Native American Indian tribes “enjoy broad sovereign immunity from lawsuits”
 
 (Boisclair, supra,
 
 51 Cal.3d at p. 1157, citing
 
 Santa Clara Pueblo
 
 v.
 
 Martinez
 
 (1978) 436 U.S. 49, 59 [98 S.Ct. 1670, 1677, 56 L.Ed.2d 106]) and “may . . . exercise sovereign power over non-Indians who enter tribal land”
 
 (Boisclair, supra,
 
 51 Cal.3d at p. 1158, citing
 
 Williams
 
 v.
 
 Lee
 
 (1959) 358 U.S. 217, 223 [79 S.Ct. 269, 272, 3 L.Ed.2d 251]).
 

 On the other hand, states have no power to regulate the use or governance of Native American Indian country in the absence of an effective waiver or consent by Congress or the tribe.
 
 (Hydrothermal Energy Corp.
 
 v.
 
 Fort Bidwell Indian Community Council
 
 (1985) 170 Cal.App.3d 489, 494-495 [216 Cal.Rptr. 59];
 
 Long
 
 v.
 
 Chemehuevi Indian Reservation
 
 (1981) 115 Cal.App.3d 853, 857-858, 860, fn. 7 [171 Cal.Rptr. 733], cert. den. 454 U.S. 831 [102 S.Ct. 129, 70 L.Ed.2d 109].) It is settled that a waiver of sovereign immunity cannot be implied but must be unequivocally expressed.
 
 {Hydrothermal Energy Corp., supra,
 
 170 Cal.App.3d at p. 494, citing
 
 Santa Clara Pueblo
 
 v.
 
 Martinez, supra,
 
 436 U.S. at p. 58 [98 S.Ct. at p. 1677];
 
 White Mountain Apache Tribe
 
 v.
 
 Indus. Com’n
 
 (1985) 144 Ariz. 129 [696 P.2d 223, 228].)
 

 Here, it is undisputed that Tribe did not consent in any form of agreement to a waiver of its general right to defensively assert sovereign immunity. (See, e.g.,
 
 United States
 
 v.
 
 State of Or.
 
 (9th Cir. 1981) 657 F.2d 1009, 1013-1014 [“Indian tribes may consent to suit without explicit Congressional authority”].) While Congress can authorize suits against Indian nations, we are required, as a matter of law, to recognize Tribe’s sovereign immunity status in the absence of an explicit congressional waiver.
 
 (Santa Clara Pueblo
 
 v.
 
 Martinez, supra,
 
 436 U.S. at p. 58 [98 S.Ct. at p. 1677];
 
 Long
 
 v.
 
 Chemehuevi Indian Reservation, supra,
 
 115 Cal.App.3d at p. 858;
 
 Tibbetts
 
 v.
 
 Leech Lake Reservation Business
 
 (Minn. 1986) 397 N.W.2d 883, 886.)
 

 In summary, our review of decisional law teaches that a “ ‘ “. . . policy of leaving Indians free from state jurisdiction and control is deeply rooted in this nation’s history.”’”
 
 (Boisclair, supra,
 
 51 Cal.3d at p. 1147, quoting
 
 McClanahan
 
 v.
 
 Arizona State Tax Comm’n, supra,
 
 411 U.S. at p. 168 [93 S.Ct. at p. 1260].) “This policy has two independent but interrelated
 
 *1348
 
 bases: federal preemption
 
 and
 
 the internal sovereign rights of Indian tribes.”
 
 (Boisclair, supra,
 
 51 Cal.3d at p. 1147, italics added, citing
 
 White Mountain Apache Tribe
 
 v.
 
 Bracker
 
 (1980) 448 U.S. 136, 142 [100 S.Ct. 2578, 2583, 65 L.Ed.2d 665].) States may regulate within Indian country
 
 only
 
 when state control is not preempted by federal law
 
 or when state control does not infringe on tribal sovereignty. (Bracker,
 
 supra, 448 U.S. at pp. 142-143 [100 S.Ct. at pp. 2583-2584], citing
 
 Williams
 
 v.
 
 Lee, supra,
 
 358 U.S. at p. 220 [79 S.Ct. at pp. 270-271].) Here, Tribe’s sovereign status is an independent barrier for holding California’s workers’ compensation laws inapplicable because their enforcement by the Appeals Board unlawfully infringes on the right of Tribe to govern its own employment affairs.
 
 (White Mountain Apache Tribe
 
 v.
 
 Bracker, supra,
 
 448 U.S. at pp. 142-143 [100 S.Ct. at pp. 2583-2584].)
 

 This long-established national tradition of Indian sovereignty provides the context for our analysis of the applicability of section 1360 to this case.
 

 B.
 
 Section 1360: Intent and Legislative History
 

 Although the federal government has plenary power over tribal affairs, it began to delegate some of this authority to the states in the early 1950’s during an assimilationist period.
 
 (Boisclair, supra,
 
 51 Cal.3d at pp. 1149-1150.) Public Law No. 280 (Public Law 280),
 
 [4]
 
 of which section 1360 is part, was enacted by Congress in 1953.
 
 [5]
 
 It confers both civil and criminal jurisdiction over Indian country to six designated states and permits other states the option of assuming similar jurisdiction. The primary focus of the legislative history of Public Law 280 is on the grant of criminal jurisdiction set forth in section 2 (codified in 18 U.S.C. § 1162).
 
 [6]
 

 (Bryan
 
 v.
 
 Itasca County, supra,
 
 426 U.S. at pp. 379-386 [96 S.Ct. at pp. 2106-2110].) The lack of legislative attention to the civil jurisdiction provision in section 4 of Public Law 280 (§ 1360)
 
 (Bryan, supra,
 
 at pp. 381-386 [96 S.Ct. at pp. 2107-2110]) “has led one commentator to conclude that such jurisdiction was ‘an afterthought . . . added because it comported with the
 
 *1349
 
 pro-assimilationist drift of federal policy . . . .’”
 
 (Boisclair,
 
 supra, 51 Cal.3d at p. 1150, quoting Goldberg,
 
 Public Law 280: The Limits of State Jurisdiction Over Reservation Indians
 
 (1975) 22 UCLA L.Rev. 535, 543.)
 

 In
 
 Bryan
 
 v.
 
 Itasca County, supra,
 
 426 U.S. 373, the Supreme Court attempted to reconcile these jurisdictional discrepancies. The issue in
 
 Bryan
 
 was whether a Minnesota statute that allowed Itasca County to impose a personal property tax on mobile homes could be enforced upon a member of the Chippewa Tribe who lived on tribal land.
 
 (Id.
 
 at p. 375 [96 S.Ct. at pp. 2104-2105].) While the language of section 1360, granting state civil jurisdiction “over civil causes of action between Indians or to which Indians are parties” initially seemed sweeping, the Supreme Court
 
 narrowly
 
 construed it.
 
 Bryan
 
 held that a state could exercise civil jurisdiction under section 1360 only to the extent necessary to resolve civil disputes
 
 between Indians and private individuals.
 
 (426 U.S. at p. 385 [96 S.Ct. at p. 2109] [§ 1360 limited to “private civil litigation involving reservation Indians in state court”].) The court applied the criminal/prohibitory—civil/regulatory distinction to reach its result.
 
 Bryan
 
 is important because its effort to narrowly interpret section 1360 set the tone for the modem regulatory versus prohibitory analysis undertaken when a state attempts to regulate tribal activities by asserting civil or criminal jurisdiction under Public Law 280. (Royster & Fausett,
 
 *1350
 

 Control of the Reservation Environment: Tribal Primacy, Federal Delegation, and the Limits of State Intrusion, supra,
 
 64 Wash. L.Rev. 581, 607-611.)
 

 Bryan
 
 thoroughly examined the legislative history of Public Law 280 and acknowledged the canons of construction applicable to congressional statutes claiming to terminate Native American Indian immunities.
 
 (Bryan
 
 v.
 
 Itasca County, supra,
 
 426 U.S. at pp. 379-380 [96 S.Ct. at pp. 2106-2107].)
 
 Bryan
 
 established from the “sparse legislative history” that the primary concerns of Congress when it enacted Public Law 280 were “the problem of lawlessness on certain Indian reservations, and the absence of adequate tribal institutions for law enforcement. . . . Thus, provision for
 
 state criminal jurisdiction
 
 over offenses committed by or against Indians on the reservations was the central focus of Pub. L. 280 and is embodied in [section 1162], [¶] In marked contrast in the legislative history [of Public Law 280] is the virtual absence of expression of congressional policy or intent respecting [section 1360’s] grant of civil jurisdiction to the States.” (426 U.S. at pp. 379-381 [96 S.Ct. at pp. 2106-2107], italics added.) The court acknowledged that Public Law 280 was enacted during a time when Congress as a matter of policy favored assimilationist legislation. (426 U.S. at pp. 387-388 [96 S.Ct. at pp. 2110-2111].) However, “nothing in its legislative history,” emphasized the court, “remotely suggests that Congress meant the Act’s extension of civil jurisdiction to the States should result in the undermining or destruction of such tribal governments .... The Act itself refutes such an inference;
 
 there is notably absent any conferral of state jurisdiction over the tribes themselves
 
 . . . .”
 
 (Id.
 
 at pp. 388-389 [96 S.Ct. at pp. 2110-2111], italics added.)
 

 Ten years later, the Supreme Court reexamined Public Law 280 in
 
 Cabazon, supra,
 
 480 U.S. 202, in the context of California’s attempt to regulate profit-based Indian gaming activities. In
 
 Cabazon,
 
 the Supreme Court sharply limited the power of the states to apply their gambling laws to Indian gaming activities. In response to
 
 Cabazon,
 
 Congress enacted the Indian Gaming Regulatory Act (IGRA) in 1988. (25 U.S.C. § 2701 et seq.) IGRA supersedes
 
 Cabazon
 
 to the extent that tribal-state conflicts over Indian gaming regulation are now governed by its statutory scheme.
 

 Cabazon,
 
 however, provides guidance in resolving the immediate issue before this court of the jurisdiction of the Appeals Board over Tribe. Rejecting state jurisdiction and narrowly construing Public Law 280,
 
 Cabazon
 
 reaffirmed the civil/regulatory—criminal/prohibitory dichotomy articulated in
 
 Bryan.
 
 The
 
 Cabazon
 
 court observed: “In § 2, California was granted broad criminal jurisdiction over offenses committed by or against Indians within all Indian country within the State.
 
 Section 4’s grant of civil jurisdiction was more limited.
 
 In
 
 Bryan
 
 v.
 
 Itasca-County
 
 . . . , we interpreted § 4 to
 
 *1351
 
 grant States jurisdiction over private civil litigation involving reservation Indians in state court,
 
 but not to grant general civil regulatory authority. . . .
 
 Accordingly, when a State seeks to enforce a law within an Indian reservation under the authority of Pub. L. 280,
 
 it must be determined whether the law is criminal in nature, and thus fully applicable to the reservation under § 2
 
 [section 1162], or civil in nature, and applicable only as it may be relevant to private litigation in state court [under section 1360].”
 
 (Cabazon, supra,
 
 480 U.S. at pp. 207-208 [107 S.Ct. at pp. 1087-1088], italics added, fns. omitted.) “But that an otherwise regulatory law is enforceable by criminal as well as civil means does not necessarily convert it into a criminal law within the meaning of Pub. L. 280.
 
 Otherwise, the distinction between § 2 and § 4 of that law could easily be avoided and total assimilation
 
 permitted.”
 
 {Id.
 
 at p. 211 [107 S.Ct. at p. 1089], italics added.)
 

 We find it significant that
 
 Cabazon
 
 declined to modify
 
 Bryan
 
 on a crucial point of law: Section 1360 does not confer on California the power to enforce its full panoply of general civil regulatory jurisdiction over Native American Indian
 
 tribes.
 
 We conclude therefore that
 
 Bryan
 
 is controlling on this point.
 
 (Bryan
 
 v.
 
 Itasca County, supra,
 
 426 U.S. at pp. 385, 389-390 [96 S.Ct. at pp. 210-, 2111-2112]; accord,
 
 Cabazon, supra,
 
 480 U.S. at p. 208 [107 S.Ct. at pp. 1087-1088];
 
 Boisclair, supra,
 
 51 Cal.3d at p. 1150;
 
 People
 
 ex rel.
 
 Dept. of Transportation
 
 v.
 
 Naegele Outdoor Advertising Co.
 
 (1985) 38 Cal.3d 509, 519-520 [213 Cal.Rptr. 247, 698 P.2d 150];
 
 Hydrothermal Energy Corp.
 
 v.
 
 Fort Bidwell Indian Community Council, supra,
 
 170 Cal.App.3d at p. 494;
 
 Long
 
 v.
 
 Chemehuevi Indian Reservation, supra,
 
 115 Cal.App.3d at p. 856.)
 

 No cases have been cited to us, nor do we find any law, to support the position taken by the Appeals Board that section 1360 is a congressional waiver of Tribe’s sovereign status. In
 
 Three Affiliated Tribes
 
 v.
 
 Wold Engineering
 
 (1986) 476 U.S. 877 [106 S.Ct. 2305, 90 L.Ed.2d 881], the United States Supreme Court again emphasized that nothing in section 1360 confers state jurisdiction over the tribes themselves, stating: “Public Law 280 certainly does not constitute a ‘governing Act of Congress’ which validates this type of interference with tribal immunity and self-government. We have never read Pub. L. 280 to constitute a waiver of tribal sovereign immunity, nor found Pub. L. 280 to represent an abandonment of the federal interest in guarding Indian self-governance.” (476 U.S. at p. 892 [106 S.Ct. at p. 2314].) If Congress had intended to confer state workers’ compensation jurisdiction over Native American Indian tribes when it enacted Public Law 280, it would have expressly said so.
 
 (Tibbetts
 
 v.
 
 Leech Lake Reservation Business, supra,
 
 397 N.W.2d at p. 887.) Section 1360 is unquestionably not such an expression.
 

 
 *1352
 
 With these principles in mind, we address the specific conclusion of the Appeals Board and find it erroneous.
 

 C.
 
 State Workers’ Compensation Laws Are Regulatory, Not Prohibitory
 

 California’s workers’ compensation law is a statutory system enacted under the constitutional grant of plenary power to the Legislature to establish a complete and exclusive system of workers’ compensation. (Cal. Const., art. XIV, § 4;
 
 [7]
 
 Lab. Code, § 3201.) It is an expression of police power.
 

 The Workers’ Compensation Act (Lab. Code, § 3200 et seq.) reflects California’s strong state interest in ensuring certain and reasonable compensation for workers injured in the course and scope of their employment. It is a civil regulatory law. It is the quintessential example of regulation by the state in its purest form: Rights to common law remedies are usurped by a set of highly structured, specific rules regarding work injuries. The purposes of the act are several. “It seeks (1) to ensure that the cost of industrial injuries will be part of the cost of goods rather than a burden on society, (2) to guarantee prompt, limited compensation for an employee’s work injuries, regardless of fault, as an inevitable cost of production, (3) to spur increased industrial safety, and (4) in return, to insulate the employer from tort liability for his employees’ injuries.”
 
 (S. G. Borello & Sons, Inc.
 
 v.
 
 Department of Industrial Relations
 
 (1989) 48 Cal.3d 341, 354 [256 Cal.Rptr. 543, 769 P.2d 399].)
 

 In this case, the Appeals Board implies that California’s exercise of police power to regulate industrial injuries somehow transforms the Workers’ Compensation Act into a penal statute. This outcome, reasons the Appeals Board, is reinforced by the requirement in Labor Code section 3700 that every employer in California, except the state, is required to “secure the payment of compensation.” Moreover, the Appeals Board alludes to the fact
 
 *1353
 
 that under California law “[t]he failure to secure the payment of compensation ... is a misdemeanor.” (Lab. Code, § 3700.5.) Embracing this logic, the Appeals Board concludes that the Workers’ Compensation Act is prohibitory, hence criminal, under
 
 Cabazon
 
 and that Congress grants California criminal jurisdiction to enforce its civil regulatory workers’ compensation laws against tribal employers, ostensibly under section 1162. This rationalization must fail.
 

 Invoking a criminal sanction for its violation does not necessarily convert a statute or ordinance into a criminal law under section 1162 and make the statute enforceable in Indian country under Public Law 280.
 
 (Cabazon, supra,
 
 480 U.S. at p. 211 [107 S.Ct. at p. 1089].) Often the police power of a state is equated with the power to govern. However, characterization of regulatory legislation as an expression of police power does not authorize the state “to bulldoze away everything lying within its path.”
 
 (Pacific Employers Ins, Co.
 
 v.
 
 Industrial Acc. Com.
 
 (1963) 219 Cal.App.2d 634, 640 [33 Cal.Rptr. 442].)
 

 Here, the Appeals Board relied on the police power origins of California’s workers’ compensation laws to support its characterization of these laws as “criminal/prohibitory.” To the contrary, California does not prohibit industrial injuries; it regulates them. The Appeals Board ignored the manifest regulatory status of our state workers’ compensation laws as well as the fact that Congress under section 1360 did not grant states regulatory jurisdiction over Native American Indian tribes. Additionally, we find the Appeals Board’s sinuous logic undermined by the fact that Tribe actually carries some sort of workers’ compensation insurance which paid for Sherron’s medical treatment.
 

 Curiously, Sherron did not seek to have either the WCJ or the Appeals Board order Tribe to file a copy of its workers’ compensation insurance policy in the proceedings below. It is well established that the party seeking the relief afforded under the state workers’ compensation laws has the burden of proving the requisite jurisdictional facts. Nonetheless, Sherron asserts in his answer that “[n]o evidence was submitted to the record to indicate the insurance policy had some way of compensating injured workers for residual problems with their injuries.” Sherron requests that we order Tribe to file the policy. The insurance policy is not part of the record on review and thus cannot be considered. (Lab. Code, § 5951.)
 

 Furthermore, we note that an exhaustion-of-remedy issue is neither before us nor determinative of the outcome. That is, assuming Sherron had been
 
 *1354
 
 aware of his tribal remedies and failed to exhaust them before filing a state workers’ compensation claim, there remains the threshold issue of subject matter jurisdiction and Tribe’s right to be protected from Appeals Board/ state interference under the doctrine of sovereign immunity. (See
 
 White Mountain Apache Tribe
 
 v.
 
 Indus. Com’n, supra,
 
 696 P.2d at pp. 228-230 [purchase by Arizona tribe of workers’ compensation insurance, which by its terms made applicable Arizona’s state compensation laws, did
 
 not
 
 constitute waiver of the tribe’s sovereign immunity from state law and its industrial commission].)
 

 Tibbetts
 
 v.
 
 Leech Lake Reservation Business, supra,
 
 397 N.W.2d 883, is consistent with our analysis of the jurisdictional issues before this court. Minnesota, like California, is a Public Law 280 state. In
 
 Tibbetts,
 
 the Minnesota Workers’ Compensation Court of Appeals determined that Public Law 280 constituted a congressional waiver of a tribal employer’s sovereign immunity from state workers’ compensation liability for its employees. The Supreme Court of Minnesota reversed for several reasons, including its dismissal of the notion that Minnesota’s Workers’ Compensation Act (Minn. Stat. § 176.001 et seq.)
 
 [8]
 
 was not a civil regulatory law under
 
 Bryan
 
 v.
 
 Itasca County supra,
 
 426 U.S. 373.
 
 (Tibbetts
 
 v.
 
 Leech Lake Reservation Business, supra,
 
 397 N.W.2d at p. 887.)
 

 In the case before us, the Appeals Board declined to find
 
 Tibbetts
 
 relevant. However, we find that the stated purpose underlying Minnesota’s workers’ compensation laws is virtually the same as that expressed in article XIV, section 4 of the California State Constitution. We conclude therefore that
 
 Tibbetts
 
 is relevant to the issues in this case; it is also sound law and persuasive authority.
 

 Consistent with
 
 Tibbetts,
 
 the State of Washington’s board of industrial insurance appeals declined to find jurisdiction to enforce a workers’ compensation claim against a tribal employer.
 
 (In re: William L. Mathews
 
 (1994) 21 Indian L. Rep. 5131.) Following
 
 Bryan,
 
 the industrial appeals judge stated: “The Department of Labor and Industries’ procedure for processing
 
 *1355
 
 workers’ compensation claims is an administrative, or civil/regulatory process, and therefore, such jurisdiction was not authorized by Congress.”
 
 (Id.
 
 at p. 5132.) The judge also stated that claimant was not left without a remedy. “Indian tribal courts are effective forums for the exclusive adjudication of claims involving Indians and non-Indians alike.”
 
 (Ibid.)
 
 Similarly, in
 
 Zempel
 
 v.
 
 Uninsured Employers’ Fund
 
 (Mont. 1997) 938 P.2d 658, the Supreme Court of Montana upheld the dismissal for lack of jurisdiction by the state workers’ compensation court over a workers’ compensation claim filed by an employee of a tribally owned business who was injured on the Indian reservation.
 
 (Id.
 
 at p. 664.) Likewise, a recent Appeals Board case,
 
 Rodriguez
 
 v.
 
 Sycuan Gaming
 
 Center, WCAB Case No. SDO 207197, involved the same issue before this court. The workers’ compensation judge dismissed the injured employee’s application for compensation benefits with prejudice on March 22, 1996, finding no waiver of sovereign immunity either by congressional act or by the Indian tribe. Reconsideration apparently was not sought.
 

 D.
 
 40 United States Code Section 290 Is Not Applicable
 

 Finally, this court invited the parties to submit supplemental briefing regarding the relevance of 40 United States Code section 290 which gives a state limited jurisdiction to apply its compensation law on federal lands located within the state boundaries to cover injuries sustained by employees not directly employed by the federal government.
 
 [9]
 
 Section 290 does not operate as a congressional waiver of Tribe’s sovereign immunity in this case and was not intended to apply state workers’ compensation laws to Native
 
 *1356
 
 American Indian
 
 tribes. (Tibbetts
 
 v.
 
 Leech Lake Reservation Business, supra,
 
 397 N.W.2d at pp. 887-888.) It is not dispositive of any issues before this court.
 

 Conclusion
 

 For the reasons discussed above, section 1360 is not a congressional waiver of Tribe’s right to sovereign immunity from state workers’ compensation liability. The Appeals Board does not have subject matter jurisdiction over Tribe.
 

 Disposition
 

 The decision of the Appeals Board dated July 29, 1996, is reversed. Parties are to bear their own costs on appeal.
 

 Peterson, P. J., and Haning, J., concurred.
 

 Respondents’ petition for review by the Supreme Court was denied April 22, 1998. Mosk, J., was of the opinion that the petition should be granted.
 

 [1]
 

 Petitioner also seeks a peremptory writ or in the alternative a writ of prohibition. The Legislature has adopted the “writ of review” as the statutory method for review of compensation decisions of the Workers’ Compensation Appeals Board and for “inquiring into and determining the lawfulness of’ the orders, decisions, and awards of the appeals board. (Lab. Code, § 5950.) Although a writ of mandate shall lie in proper cases (Lab. Code, § 5955), such extraordinary relief is both duplicative and unnecessary in the matter before us.
 

 [2]
 

 The WCJ heard evidence that an injured worker can appear before the tribal council when he or she has a contested issue. Under questioning by the WCJ, Ms. Reyes testified as follows: “Q Is there any sort of system set up to deal with a situation in which an injured worker feels he is not receiving the correct medical treatment? In other words, do you have a workers’ compensation court set up to deal with injured workers who are appealing the benefits that are being provided under this workers’ compensation policy?
 

 “A No, we do not. What we do have that—at times, they can appear before the Tribal Council if they feel that there was not a justified answer.
 

 “Q And is this tribal—the appearance before the Tribal Council—is that limited solely to Indians, or is it to both Indians and non-Indians?
 

 “A It’s both to Indians and non-Indians, patrons and employees.”
 
 *1345
 
 However, Sherron testified he had not been advised of any rights to appeal a decision by Tribe or its insurance carrier to the tribal council concerning his workers’ compensation entitlement.
 

 [3]
 

 Hereafter referred to as “section 1360.” Section 1360 reads in its entirety: “(a) Each of the States listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State:
 

 “State of Indian country affected
 

 “Alaska.........All Indian country within the State.
 

 “California.......All Indian country within the State.
 

 “Minnesota.......All Indian country within the State, except the Red Lake Reservation.
 

 “Nebraska.......All Indian country within the State.
 

 “Oregon........All Indian country within the State, except the Warm Springs Reservation.
 

 “Wisconsin.......All Indian country within the State.
 

 “(b) Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including water rights, belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto; or shall confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of such property or any interest therein.
 

 “(c) Any tribal ordinance or custom heretofore or hereafter adopted by an Indian tribe, band, or community in the exercise of any authority which it may possess shall, if not inconsistent with any applicable civil law of the State, be given full force and effect in the determination of civil causes of action pursuant to this section.”
 

 Alaska was added by Act of August 8,1958, Public Law No. 85-615, section 1,72 Statutes 545 (codified at 18 U.S.C. § 1162(a), 28 U.S.C. § 1360(a) (1988)).
 

 Other states were later allowed to choose to assume authority under section 1360 (and Pub.L. No. 280 in its entirety), but the choice is currently conditioned on tribal approval. (25 U.S.C. §§ 1321-1322 (1994); Indian Civil Rights Act of 1968, 25 U.S.C. § 1301 et seq.)
 

 [4]
 

 For purposes of clarity, all references to Public Law 280 are made in the context of the entire act. When discussing only the civil jurisdictional aspects of Public Law 280, reference is made to “section 1360”; when discussing only the criminal jurisdictional aspects of Public Law 280, reference will be made to “section 1162.”
 

 [5]
 

 Act of August 15, 1953, Public Law No. 83-280, 67 Statutes 588, as amended by the Indian Civil Rights Act of 1968, Public Law No. 90-284, 82 Statutes 73 (codified in scattered titles of 18, 25 and 28 U.S.C.).
 

 [6]
 

 Hereafter referred to as section 1162, which reads in pertinent part: “(a) Each of the States or Territories listed in the following table shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over offenses
 
 *1349
 
 committed elsewhere within the State or Territory, and the criminal laws of such State or Territory shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory:
 

 “State or Territory of Indian country affected
 

 “Alaska..........All Indian country within the State, except....
 

 “California........All Indian country within the State.
 

 “Minnesota........All Indian country within the State, except the Red Lake Reservation.
 

 “Nebraska........All Indian country within the State.
 

 “Oregon.........All Indian country within the State, except the Warm Springs Reservation.
 

 “Wisconsin........All Indian country within the State.
 

 “(b) Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including water rights, belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto; or shall deprive any Indian or any Indian tribe, band, or community of any right, privilege, or immunity afforded under Federal treaty, agreement, or statute with respect to hunting, trapping, or fishing or the control, licensing, or regulation thereof.
 

 “(c) The provisions of sections 1152 and 1153 of this chapter shall not be applicable within the areas of Indian country listed in subsection (a) of this section as areas over which the several States have exclusive jurisdiction.”
 

 [7]
 

 California Constitution, article XIV, section 4 provides in relevant part: “The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workers’ compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workers for injury or disability, and their dependents for death incurred or sustained by the said workers in the course of their employment, irrespective of the fault of any party. A complete system of workers’ compensation includes adequate provisions for the comfort, health and safety and general welfare of any and all workers and those dependent upon them for support to the extent of relieving from the consequences of any injury or death incurred or sustained by workers in the course of their employment, irrespective of the fault of any party; also full provision for securing safety in places of employment; full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such injury; . . . full provision for otherwise securing the payment of compensation . . . .”
 

 [8]
 

 Minnesota Workers’ Compensation Statute, section
 
 176.001,
 
 provides: “It is the intent of the legislature that chapter 176 be interpreted so as to assure the quick and efficient delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers who are subject to the provisions of this chapter. . . . The workers’ compensation system in Minnesota is based on a mutual renunciation of common law rights and defenses by employers and employees alike. Employees’ rights to sue for damages over and above medical and health care benefits and wage loss benefits are to a certain degree limited by the provisions of this chapter, and employers’ rights to raise common law defenses such as lack of negligence, contributory negligence on the part of the employee, and others, are curtailed as well. . . .”
 

 [9]
 

 40 United States Code section 290 (1997), enacted in 1936, provides: “Whatsoever constituted authority of each of the several States is charged with the enforcement of and requiring compliances with the State workmen’s compensation laws of said States and with the enforcement of and requiring compliance with the orders, decisions, and awards of said constituted authority of said States shall have the power and authority to apply such laws to all lands and premises owned or held by the United States of America by deed or act of cession, by purchase or otherwise, which is within the exterior boundaries of any State and to all projects, buildings, constructions, improvements, and property belonging to the United States of America, which is within the exterior boundaries of any State, in the same way and to the same extent as if said premises were under the exclusive jurisdiction of the State within whose exterior boundaries such place may be. [¶] For the purposes set out in this section, the United States of America vests in the several States within whose exterior boundaries such place may be, insofar as the enforcement of State workmen’s compensation laws are affected, the right, power, and authority aforesaid:
 
 Provided, however.
 
 That by the passage of this section the United States of America in nowise relinquishes its jurisdiction for any purpose over the property named, with the exception of extending to the several States within whose exterior boundaries such place may be only the powers above enumerated relating to the enforcement of their State workmen’s compensation laws as herein designated:
 
 Provided further,
 
 That nothing in this section shall be construed to modify or amend subchapter I of chapter 81 of Title 5.”